Statement of the Case.
MONROE, C. J.
Plaintiffs, who are husband and wife, were riding, as passengers, in a public vehicle, known as a “jitney bus,” *309 on Marshall street in Shreveport, going north, at a point between fourth and third streets, when the bus was overtaken by one of defendant’s street cars which knocked it down an embankment, about 20 feet high (measured on the slope), and overturned it under a negro cabin, which stood on stilts at the foot of the embankment. They sustained injuries for which they brought separate actions in damages, which actions were consolidated, for the purposes of the trial in the district court, and resulted in verdicts awarding the husband $0,000 and the wife $5,000. Defendant has appealed and plaintiffs have answered, praying that the awards be increased. The appeals have been brought up in one transcript and consolidated, for the purposes of the argument and. decision, and will be disposed of in one judgment.
It appears from the evidence that the bus had been traveling for several squares with the two wheels on the left side upon the railway and the other two wheels on the roadway; that it was moving at the rate of 12 or 15 miles an hour, carrying nine passengers who occupied seats running lengthwise and capable of accommodating 16; that the car came behind it at the rate of not less than 25 miles an hour, on a down grade, and that the motorman saw the bus, from ISO to 300 feet in frpnt of him, though he testifies that it was then entirely on the roadway and that it “cut in” on the track about 30 feet in front of him. His testimony, is, however, overborne by that of other witnesses. It also appears that the motorman sounded no whistle or bell until the car was so close to the bus that the crash of the collision followed “almost immediately” (to quote the language of several of the witnesses). The bus being overturned pinned several of the passengers including plaintiffs, underneath it, so that it required some effort to get them out. Plaintiffs went at once to a sanatorium where they remained and received treatment for three days, after which they went home, where the treatment was continued. Within two weeks, Mr. Burt was able to be on the street, but was compelled to use a crutch because of injury to his left knee (and was still using it at the time of the trial). At the end of that time he returned to the bank in which he was employed as bookkeeper, but, not being able to stand while at his work, was assigned to some other position, the duties of which he could discharge while seated. Shortly before the trial, which took place about three months after the accident, he resumed his functions as bookkeeper, though he testified that he was not altogether sure that his left leg, the knee of which was still somewhat swollen and had an excess of fluid under the cap, would permit him to hold it. About four weeks prior to the accident Mrs. Burt had been operated on for appendicitis, and had been up for about two weeks when the accident occurred. The operation was performed by Dr. Abramson, assisted by Dr. Sander-son, and those surgeons treated plaintiffs during their stay in the sanatorium after the accident; Dr. Sanderson attending more particularly to Mrs. Burt and Dr. Abram-son to Mr. Burt. When they returned home, Dr. Sanderson alone visited them, save, perhaps, upon certain special occasions when other surgeons were called in, for the purposes, as we understand, of this case, and made single examinations, or, at most, two or three.
The plaintiffs had been married a few months prior to the accident, and, prior to their marriage in May, preceding the 16th of September when the accident occurred, Mrs. Burt officiated for about 15 months as a trained nurse in the same sanatorium, under the direction of the same Dr. Abram-son, who was therefore fairly well acquaint *311 ed with her. Dr. Sanderson gives the following testimony and prognostic concerning the injuries received by Mr. Burt, to wit:
“I recall, by looking at and referring to these notes which I made myself, that he had a laceration of the left jaw; laceration of the middle finger of the left hand; brush burn of right shoulder; brush burn of right elbow; laceration of right knee; brush burn of right ankle, laceration of left knee, and numerous abrasions of lesser consequence; and I make further note that he was complaining of trouble with his back and his left knee and that his spine gave' him pain. * * * A. Yes, sir; I would say that it was severe. Q. Doctor, I will ask you, from your examination at the time and from your examination since, whether it is probable that he will regain the full and normal use of that [left] knee, or whether the probabilities are that he will' have a limp, or a rigid or stiff knee ? A. Well, I don’t think that the leg will be rigid or stiff, but I do think that it will be permanently weakened and painful. There will probably be some lack of motion, the same that ho has now, and there will be times that it will bo a great deal better than it is now and, at times, a great deal worse.”
As to the injuries received by Mrs. Burt, and their possible consequences, the same surgeon gives the following testimony:
“She was greatly shocked and nervous, with a history of having been unconscious, following the accident. Her head presented numerous small punctures, wounds presumably due to her hair pins having been driven into the scalp; the right elbow and back of her hand were lacerated ; the left arm showed severe contusion between the elbow and the shoulder — and I then made a note that she was highly nervous and complaining of general pain; both thighs were marked by bruises in front — and I have another note here about a condition that was aggravated — an operation had been performed before that — an abdominal operation. * * * It showed red. * * * The rod that followed the shaking up has disappeared, but the scar has broadened to about four times what it was before. * * * She was practically hysterical for some weeks after the injury, and she had periods of crying and fear, and just what we consider neurasthenia. * * * Her back seems weakened; after standing, her back hurts and she has to lie down a great deal. * * * She has improved some since the time she was injured, and she will probably improve some more, but I do not think that she will ever be as healthy as she would have been without the injury. * * * I do not think so” [that her nervous system or condition will ever return to the normal condition].
Another surgeon corroborates the testimony thus quoted; does not think that Mr. Burt will he permanently lame, hut is of opinion that the knee will probably, at times, give him trouble during the balance of his life; says that Mrs. Burt’s condition is considered serious on account of its chronic condition; that, if a person in such condition ever returns to the normal, it takes years and depends upon her health and treatment, and that it is very hard to make a recovery save by special treatment, for a long time.
Dr. Abramson and two or three other surgeons testify that Mr. Burt’s injury is not permanent, and one of them thought it was about time for him to have recovered entirely. Their attention does not appear to have been called to Mrs. Burt’s neurasthenia, and they did not, themselves, observe it.
Mr. Burt testified to pains, more or less, at the time of the trial, and Mrs. Burt testified that she suffered severely from soreness, during the two weeks following the accident, and was still suffering from pain, or weakness, in her back. The surgeons seemed, however, to be of opinion that both plaintiffs were in a fair way to recover, if they had not already done so, from all. their injuries, save, as has been stated, with regard to Mr. Burt’s knee and Mrs. Burt’s neurasthenia. Mr. Burt was 27 and Mrs. Burt 22 years of age at the time of the trial. The verdicts contain the following specifications, to wit:
In the case of Mr. Burt:
“Actual damages, $4,395; pain and suffering, $1,000; physician and surgeon’s fees, $S5; punitive damages, $500 ; total, $6,000.”
In the case of Mrs. Burt:
“Actual damages, $3,500; pain and suffering, $1,000 ; punitive damages, $500 ; total, $5,000.”
A motion for new trial was overruled, and the appeal was taken.
Opinion.
In overruling the motion for new trial, the judge a quo handed down a written opinion from which we make the following excerpts:
*313 “Defendant has filed a motion for new trial from an adverse verdict of a jury, especially complaining of the allowance of punitive damages and the excessive amount allowed otherwise, and asks this court to either grant a new trial on the punitive damage part or force a remittitur, and to at least express its opinion on other questions, if it does not see fit to grant a new trial.”
“In the case of Reems v. Railway Co., 126 La. 511, 52 South. 681, the court said: ‘Where an award of damages is excessive in the opinion of the trial judge, he should compel a- remittitur or grant a new trial.’
“In the case of Anderson v. T. & P. Ry. Co., 139 La. 1104, 72 South. 751, the Supreme Court somewhat criticized this court for not granting a new trial in a jury case in which the court ■did not agree with the verdict of the jury.
“Without reiterating what, we have already said as to the advisability of granting new trials in jury cases, we merely wish to state here that state district courts, unlike federal courts, have no right to direct a verdict, and we do not think a state coubt should therefore attempt to do indirectly what it has no power to do directly, and that would be the result if it continued to set aside verdicts of juries until a jury could be found willing to do what the court thinks it should do. If the Supreme Court acted as a court of review on law only, we should not hesitate to grant new trials; but that court reviewing the facts also, we think granting a new trial would only cause delay and add expense to trials which are already! subject to much delay and great expense. These refnarks are equally applicable to any attempt made on the part of a trial judge to force a plaintiff to enter a remittitur. Dor these reasons, we are not going to either grant a new trial or force plaintiff to enter a remittitur, but shall express our opinion on both the question of punitive damages and on the amount of the verdict.”
Quoting from the opinion of this court in Ingram v. Railroad Co., 128 La. 938, 55 South. 580, on the subject of punitive damages, and taking the language quoted as his guide, our learned Brother concludes that plaintiffs were not entitled to the punitive damages allowed by the jury for the rea■son that they -failed to allege or prove that defendant ratified the conduct of its agents in charge of the car. And the opinion proceeds:
“On the question of excessive amount allowed, it devolved upon plaintiff to make the extent of the injury reasonably certain, and we cannot say that, in our opinion, it has been made reasonably certain to the extent of the amount allowed. * * * In conclusion, we think the evidence does show that plaintiff is entitled to a judgment, but not to as much as allowed.”
And the motion for new trial was overruled, and judgments were rendered in accordance with the verdicts.
[1] As the views thus expressed, and the action taken, by a judge for whose ability and singleness of purpose we have the highest respect, seems to call for some expression from this court, we submit for the consideration of our learned Brother, the following:
The Constitution declares- that the only legitimate end of government is to secure justice to all, preserve peace, etc.; that all courts shall be open, and every person shall have adequate remedy by due process of law ami justice administered without denial, partiality, or unreasonable delay, and, in order to make that guaranty effective, has provided for the establishment of the courts, with judges to preside over them, and, with the statutory law, for methods of procedure intended to secure due process of law and justice administered therein. The courts, the judges, and the process being creatures of the law, constitutional and statutory, have no existence outside of it, and the judges have therefore no capacity to add anything to, or detract anything from, the process. In view of the fallibility of human judgment, the lawmakers have included among the authorized legal proceedings constituting due process of law certain methods by which errors committed by trial courts and courts of last resort may be corrected, and among those available in the trial courts are motions for new trial.
The Code of Practice contains the following:
“Article 556. Definitive judgments may be revised, set aside, or reversed: (1) By a new trial. * * *
“Art. 558. The party who believes himself aggrieved * * * may * * * pray for a new *315 trial, which must be granted, if there be good ground. * * *
“Art. 560. A new trial shall be granted: (1) If the judgment appear clearly contrary to law and the evidence. * * * ”
Interpreting those provisions, this court has held that:
A new “trial should be granted whenever justice requires it, but never where its ends have been attained.” Hen. Dig. vol. 2, p. 987, rubric “1 In General,” No. 1, and authorities there cited.
•“This court has often said that it is the duty of courts to grant new trials when justice requires it. [Provost v. Provost] 4 Mart. [O. S.] 512; [Roberts v. Rodes] 3 [Mart.] (N. S.) 101; [Randal v. Bayon] 4 [Mart.] (N. S.) 132; [Erwin’s Ex’rs v. Trion] 2 La. 306; [Toulman v. Elliott] 15 La. 226; [Mason v. Louisiana State Marine & Fire Ins. Co.] 1 Rob. 192; [Davis v. Singleton] 7 Rob. 56; [Wilkins v. Parish of East Baton Rouge] 10 Rob. 57; [Pahnvitz v. Fassman] 2 La. Ann. 625; [Miles v. Craig] 6 La. Ann. 753. And a new trial is the proper remedy for an improper verdict. [Muse v. Curtis, 9 Mart. (O. S.) 83.] Non constat, that an appeal would have been taken if the judgment had been such as the judge a quo would_ have approved in this case.” Southworth v. City of New Orleans, 24 La. Ann. pp. 313, 314.
“If the judge of the district court was of the opinion that the verdict of the jury was, as he says, * * in direct and flagrant violation of law and the evidence, and in utter disregard of Ms charge, he should have set the verdict aside, and granted a new trial. A different jury might render a verdict in accordance with law and equity, and which may be satisfactory to both parties. It is as much the province of the district courts to set aside the verdict of a jury, when contrary to law, as it is ours, and we cannot sanction the practice, become too common, that an inferior judge should sign a judgment which he believes and avers to be wrong, in the hope that we will set it aside. It is as much his duty to see justice done between the parties litigating their rights before him as it is ours. Why he should render a judgment which he knows was wrong, any more than we should, we are at a loss to imagine.” Halliday v. Lanata, 25 La. Ann. 373, 374.
See, also, Adams v. Webster, 25 La. Ann. 113.
It should hardly be necessary to add that, where courts of original and of appellate and supervisory jurisdiction are established within the same territory, and the power to interpret the law in last resort is vested in the latter, the former are in conscience bound by their rulings. Moreover, it is a well-recognized rule that a judgment which is taken up by appeal has a presumption of correctness in its favor, particularly where questions of fact are involved, and the appellate courts rely to a considerable extent upon the trial judge, in view of his opportunity for hearing and observing the witnesses. If, however, the trial judges render their judgments upon verdicts which they disapprove, such judgment can be of no assistance to this court, especially where, as is often the case, they fail to note their disapproval, or state definitely what judgments they would approve.
The fact that additional expense may be incurred by granting a new trial in a jury case would be an entirely insufficient reason for refusing to grant it, and it was so held in Adams v. Webster, supra; but, as the law now stands, there is no considerable expense involved. Act 51, of 1908, provides that not more than two new trials shall be granted where the judge is of opinion that the verdict would operate unjustly, and act 247 of the same year provides that where such new trials are granted—
“it shall not be necessary to resummon the witnesses or hear them anew, if their testimony has once been reduced to writing, but all such testimony, and all evidence offered on the former trial shall be considered as already offered in evidence, provided the same be filed as part of the record; reserving, however, to any party the right to call new witnesses and to offer additional evidence, and with the permission of the court to x-ecall any witness for further examixxation or cross-examination, as the case may be.”
It is, no doubt, true that the trial judge cannot compel a plaintiff in whose favor a verdict has been given to enter a remittitur, but it is equally true that the plaintiff is at liberty to enter the remittitur if he thinks proper, and, if he be given to understand that the judge considers the verdict excessive but will enter judgment for a smaller amount, he has the option of accepting such amount, or taking his chance in a new trial and possible *317 appeal. If that be considered compulsion, it is only such compulsion as the judge has the right to exercise, since one of the purposes of his sitting, in this state," is to see that verdict? are neither excessive nor inadequate.
[2, 3] On the merits, we concur with the trial judge that the verdicts here in question are excessive. Since the trial .of the case, this court has held that no person suing for damages for personal injuries sustained, whether by himself or another, through the fault of third persons, is entitled to recover anything more than adequate indemnity for the injury, and loss inflicted upon him in mind, body, or estate; there being no provision in our system of laws which authorizes the cumulation, in such cases, of a civil action for the redress of a private wrong, with a quasi criminal prosecution for the assumed benefit of the public, but the sole purpose and principal effect of which is to increase the adequate indemnity recovered by the plaintiff, as actual and compensatory damages, by the addition of a pecuniary penalty in the form of exemplary, punitive, or vindictive damages. Vincent v. Morgan’s L. & T. R. R. & S. S. Co., 140 La. 1027, 74 South. 541. The $500 awarded in each case as punitive damages must therefore be disallowed. The award as for actual compensatory damage is not, we think, sustained, as to the amounts, by evidence. Neither of the plaintiffs appears to have had a bone broken or a ligament torn, and, whilst the evidence satisfies us that they were suffering at the time of the trial, the one, from the injury to his knee, and the other from neurasthenia, it does not satisfy us that they will not recover from those troubles within a reasonable time — tile fact that they are but 27 and 22 years of age, respectively, being much in their favor. We may say, too, that we are not altogether satisfied that the condition of Mrs. Burt’s nervous system is to be attributed entirely to the accident here in question (though it must have been an appalling affair to those who were involved in it). She had been but recently operated on for appendicitis, and it is a matter of common information that such operations not infrequently affect the nervous systems of the persons upon whom they are performed for a longer period than that which had elapsed in plaintiff’s case at the time of the accident. Considering, however, that the vehicle in which plaintiffs were riding was, through the gross negligence of defendant’s servant, thrown down an embankment; and badly shattered, and that they were for a while pinned beneath the débris, and must during that experience have suffered greatly, both mentally and physically, in connection with the specific injuries to which we have above referred, we are of opinion that they should each be awarded $3,500. '
It is therefore adjudged and decreed that the principal amounts awarded to the plaintiffs, respectively, by the judgments herein appealed from, be reduced, in each case, to $3,500, and that, in all other respects, these judgments be affirmed, the costs of the appeals to be borne by plaintiffs, share and share alike.