ELLIS, 'Judge.
On the morning of February 16, 1952 between 5:50 and 6:00 A.M. the plaintiff was a fare paying passenger in a taxi owned by Jasper Michelli d/b/a Istrouma Taxi Service, which was traveling south on Plank Road near its intersection with Oswego Street in the City of Baton Rouge, when a Chevrolet automobile driven by the defendant, Willie Bueche, in an opposite or northerly direction on Plank Road ran into the rear of a garbage truck owned by the City of Baton Rouge and insured by the defendant, Maryland Casualty Company, careened off the garbage truck into the air and struck the taxicab in which the plaintiff was a passenger.
An exception of no cause or right of action filed on behalf of the City of Baton Rouge was sustained by the.lower court under authority of Manguno v. City of New Orleans, La.App., 155 So. 41.
• The case was tried by a jury and a judgment was rendered in favor of plaintiff for $6,500 against the defendant, Maryland Casualty Company, and Willie Bueche, and against the plaintiff in favor of' defendants, Jasper Michelli, d/b/a Istrouma Taxi Service, and his insurer, Insurance Company of Texas.
The plaintiff has abandoned his appeal from all adverse judgments. Willie Bueche did not appeal but Maryland Casualty Company, after denial' of' a new trial, perfected a suspensive appeal and is now the only defendant before this court.
Appellant, Maryland Casualty Company, complained of four major errors in the Court below, viz.:
1. The verdict of the jury and the judgment of the court is contrary to the law and the evidence.
2. The trial judge was in error in failing to permit Maryland Casualty ■ Company to cross-examine Willie Bueche.
3. The trial judge committed error in failing to instruct the jury on the question of quantum.
4. The trial judge committed error in failing to grant Maryland Casualty Company a new trial.
Counsel for plaintiff contends that the driver of the-city garbage truck was négli-gent in' (1) failing to give a hand signal; (2) that -the rear light on -the garbage truck was concealed and could not be seen on ■the morning of the accident by Willie Bueche; (3) that the position of the truck on the highway constituted negligence, and (4) the failure of the garbage truck driver to see what he should have seen when he looked in his rear view mirror, viz., the automobile being driven by Willie -Bueche; (5) that the helpers in riding on *621 the outside of the garbage track were violating a city ordinance.
The Judge of the District Court had the following -to say on the question of liability in his written reasons for re.usal of a new trial:
“I am not prepared to hold as a matter of law that the driver of the garbage , truck was not negligent and could not be held partly responsible for this accident when the evidence shows that the driver failed to give a proper hand signal when he left the position where he had been parked, when the evidence shows that he did not observe the Bueche car approaching prior to beginning his entry into the street, and when the evidence shows that the tub of the garbage truck concealed the tail light. If, in Louisiana, we had the doctrine of comparative negligence, it would be proper to say that the driver, Bueche, was far more responsible for this accident than was the driver of the garbage truck. However, since we do not have the doctrine of comparative negligence, I am not prepared to say that the evidence does not disclose that the driver of the truck in some way contributed to the accident which resulted in the injury to the plaintiff, and inasmuch as the jury has so found by its verdict, same meets with my approval.”
In view of the opinion which we have reached in answer to the first error as contended by the Maryland Casualty Company, we will not discuss the other three.
The facts will be discussed in connection with the contentions of the plaintiff as to the negligence of the operator and occupants of the garbage truck, also bearing in mind the reasons of the trial judge for the refusal of a new trial on the question of liability.
• The facts in this case are very clear. The city garbage truck, as shown by the pictures and the testimony, was the type that had the wide tub in the rear into which the helpers dumped the garbage, and which when filled was- hydraulicly lifted to the top of the garbage truck and the garbage was dumped into the main body of the truck. The tub would then be lowered and the helpers on this particular truck rode on the tub from stop to stop. The garbage truck had just completed a pick up in front of the home of Smith Bryant and moved forward with its left wheels on the'pavement and its right wheels on the shoulder of the road, or, as commonly referred to in the testimony, half on and half off the concrete slab, and had proceeded 135 to 150 feet when it was struck in the rear by the automobile driven by Willie Bueche, which resulted in the death of one of the helpers on the garbage truck who was riding on the left-hand side of the tub attached to the rear of the truck. Bueche’s car then went up in the air and into the southbound traffic lane and came down on the hood and front of the taxicab where it remained with its left front and rear wheels off the ground. It is shown that Plank Road was level and straight, not only at the point'of collision, but for a long distance both ways, north and south, and that on the morning of the accident the weather was clear, or, at most, hazy. The evidence varies on this point, however, it can be undeniably stated that visibility was excellent considering the weather and the lights along the Plank Road. It is shown that ever 150 feet there are lights on alternating sides of the road, and some witnesses testified it was better lighted than Third Street which is the main thorofare in the City of Baton Rouge, and others that visibility was as clear as if it had been daylight,
As to Willie Bueche, he was called for cross-examination by the plaintiff and.the trial court refused to hear any cross-examination by any of the other defendants in the case, although his interest was most adverse to theirs, :and in á true' sense he was an opponent of the other defendants. Be this as it may, it is not necessary to pursue this refusal any further, in view of our opinion that the judgment is manifestly erroneous. Bueche testified under cross-examination by the plaintiff that he was -driving approximately 25 miles an *622 hour and that he did not see the men riding on the rear of the truck, although the testimony shows that both the deceased and the lucky living helper who was riding on the opposite side of the tub both waved frantically in the hope that he would see them and not strike the garbage truck, and that he first spotted the garbage truck “just right in front of me.” He was asked, “How far in front of you ? ” and his answer was, “I don’t know how far it was but soon as I saw it I slammed on the brakes.” He was definite that it was not a half block away.when he first saw it. The positive testimony shows that he left skid marks of approximately 36 feet so he was practically on top of the garbage truck before he observed it. Bueche’s excuse for not seeing it was that it “did not have any lights on it,” and that the taxicab which he first observed approaching him about two blocks away had its lights on bright and they partly blinded him. Counsel for plaintiff asked Bueche on cross-examination, “Tf a hand signal had been attempted to be given, would you have seen it?” He answered “I don’t know.” However, he did testify that if the driver of the garbage truck had given, a hand signal indicating that he was pulling out into the highway that he thinks he would have seen it.
In contrast to Bueche’s testimony, it is definitely proven that the taxicab did not have its lights on bright and therefore his excuse of being partially blinded is not sustained by the evidence, and the fact that the street was so well lighted, the bright lights approaching would offer no excuse as to Bueche for running into the rear of the garbage truck. As to the speed of Bueche’s car, the surviving helper who was riding in the rear of the truck testified that it must have been coming at 60 or 70 miles an hour. From the pictures of the damage done to the Bueche car and the testimony that it broke the universal joint in the garbage truck which weighed more than 15,000 pounds, demolished the front end of the taxicab and evidently went in the air high enough to come down on top of the front of the cab, knocked this heavy garbage truck which was traveling at approximately 5 miles per hour when strucjc a distance of 75 feet, at which distance the driver regained control of the truck which had been lost as a result of the collision and applied his brakes and stopped the truck. These facts show conclusively that Bueche’s testimony as to his speed is not worthy of belief, for even if we cut 'his speed to 50 miles an hour just prior to the collision, when the truck ■ pulled out from in front of the Bryant home after picking up garbage and was moving 5 miles an hour and had completed 150 feet when it was struck, it is easy to deduce that at the moment the truck left the Bryant residence, Bueche was 1500 feet down Plank Road. It can be safely stated that at the time the truck moved from in front of the Bryant residence that Bueche was either so far down the Plank Road that the driver of the garbage truck could not be expected to see him, but even if he could have seen the headlights of the Bueche car, there would have been no reason for him to give a hand signal for Bueche would never have 'observed it.
Even if Bueche had been very close, the failure to give a hand signal would have no significance-for if. he could not see this garbage truck which had been freshly painted a bright orange color some sixty days prior to the collision, and which was clean according to the testimony, and the pictures in evidence, and which was nine feet ten inches high, and he further did 'not see the frantically waving men on the reár of the truck, the failure on the part of the driver of the truck to give a hand signal or see him in his rear vision mirror had no causal connection with the collision. . .
It is'true that the taillighfon the truck was concealed by the tub, however, there was a clearance light on the left rear fender which was not concealed. Again it would be ridiculous to convict the operator of the garbage truck of negligence for the failure to have a visible taillight when Bueche failed to see the truck itself. Furthermore, the fact that the truck was half on and half off the highway had no connection with the collision. There is no *623 testimony and no contention that this truck suddenly pulled half way onto the highway directly in front of the approaching Bueche car, but there is some testimony from witnesses that it “seemed like” the garbage truck was angling onto the highway. At the time this truck moved from in front of the Bryant home there was no reason why it should not have angled onto the highway or pulled directly onto the highway as Bueche was more than a thousand feet away.
The fifth contention which the plaintiff sets forth in its brief, with regard to the helpers riding outside of the truck in violation of the city ordinance, does not convict the operator of the truck of any negligence connected with this collision. If Bueche had not been so engrossed in other things besides his driving, the fact that these helpers were on the outside of the truck might have prevented the collision for they frantically attempted to attract his notice and prevent him from running into the truck.
The key to this accident is shown in the testimony of a member of the police force of the City of Baton Rouge when in reading from his report while testifying he stated: “ * * * The driver had a head injury and was at times during the interview incoherent. The officers could not determine whether this was caused by having consumed alcohol or the fact that he was struck on his head. * * * ” An objection was immediately made and the examination was changed to other matters. (Emphasis added.)
Regardless of whether Bueche was drunk or sober, the facts speak for themselves, and his gross negligence was the sole proximate cause of the collision.
The statement of the trial judge above quoted in rejecting the new trial is completely answered by the facts discussed heretofore.
While courts are loathe to disturb the judgment of a judge or jury unless manifestly erroneous, it is clearly the duty of the lower court as well as the appellate courts to do so when in their opinion the judgment is manifestly erroneous. Burt v. Shreveport Ry. Co., 142 La. 308, 76 So. 723; Muse v. Curtis, 9 Mart., O.S., 82, 83; Halliday v. Lanata, 25 La.Ann. 373; Matthews v. New Orleans Terminal Co., La.App., 45 So.2d 547; Dalgara v. New Orleans Land Co., 161 La. 653, 109 So. 345; Smith v. Parker, La.App., 59 So.2d 718; Dahlberg v. Shreveport Traction Co., 141 La. 96, 74 So. 707; Gordon v. Pittman, La.App., 61 So.2d 609.
We are of the opinion that the operator of the garbage truck was not guilty of any negligence under the facts in this case, but if guilty of any it had no connection with the cause of this collision which was due solely and entirely to the gross negligence of Willie Bueche.
It is accordingly ordered that the judgment be reversed and the plaintiff’s suit dismissed at his cost.