(54 South. 708.)

No. 18,613.

TENSAS DELTA LAND CO., Limited, v. FERGUSON, Assessor, et al.

(Feb. 27, 1911. On Application for Rehearing, March 27, 1911.)

*(Syllabus by the Court.)*

1. TAXATION (§ 408*)—ASSESSMENT — RETURN OF PROPERTY OWNER.

The assessor alone is authorized to make assessments (subject to the qualification that his assessment may be changed by the board of reviewers or the State Board of Equalization, or both), and the fact that the property owner makes a return, and the time passes at which the assessor is required to give public notice that the rolls will be exposed for correction, as, also, the delay for such correction, without his hearing from the assessor to the contrary, does not make such return the assessment, without regard to what the assessor may have intended.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 675; Dec. Dig. § 408.*]

2. TAXATION (§ 450*)—ASSESSMENT—INCREASE BY STATE BOARD OF EQUALIZATION—PRESUMPTIONS.

It is manifest that, in order to carry out the purposes of article 225 of the Constitution and of Act No. 182 of 1906, and properly discharge the duty of equalizing the assessments as between the different parishes of the state, and the different property owners in the different parishes, the State Board of Equalization must reduce assessments where they are above the average and raise them where they are below, and where it raises the assessment on the lands of a particular individual it must be presumed, in the absence of allegation or proof to the contrary, that such lands were found to be assessed at a lower rate than similar lands owned by other persons. That the increase amounts to 101 per cent. is no indication of unfairness to the owner, but rather shows that his previous assessment was unfair to other taxpayers.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 800–804; Dec. Dig. § 450.*]

3. JUDGMENT (§ 251*)—QUESTIONS NOT RAISED BY PLEADINGS.

It would be unfair to the defendant and inadmissible for the court to decide a case in favor of plaintiff upon a point not suggested in the pleadings, nor relied on by plaintiff, and which defendant had no opportunity to meet.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

4. PLEADING (§ 427*)—AMENDMENT BY EVIDENCE—WHEN ALLOWED.

The rule that pleadings are broadened by evidence admitted without objection has no application to evidence offered and admitted for the purposes of an issue raised by the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1428–1432; Dec. Dig. § 427.*]

Appeal from Seventh Judicial District Court, Parish of Richland; John R. McIntosh, Judge.

Action by Tensas Delta Land Company, Limited, against John M. Ferguson, Assessor, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Hudson, Potts & Bernstein, for appellant. C. J. Ellis, Dist. Atty., for appellees.

Statement of the Case.

MONROE, J. Plaintiff brings this suit against the assessor, the police jury, and the

sheriff and (ex officio) tax collector of the parish of Richland, and against the State Board of Equalization, and alleges that after it had made a return of its lands for assessment for the year of 1909, in due time and due form, dividing them into classes and giving the valuations (Class A including lands that are susceptible of drainage without the formation of a drainage district; Class B including lands that can be drained only by the formation of such districts; and Class C including lands that are almost impossible to drain) as follows:

| | | | |
|---|---|---|---|
| Class A. | 10,025.89 acres @ $4 00 per acre... | $40,103 | 56 |
| Class B. | 7,542.47 acres @ 2 50 per acre... | 18,856 | 17 |
| Class C. | 20,551.33 acres @ 1 00 per acre... | 20,551 | 33 |
| | 38,119.69 | $79,511 | 46 |

—and after the assessor had accepted the return and the police jury had assembled and were sitting as a board of reviewers the assessor, without notice to it (plaintiff), filed a separate list with said board, on July 5th, a legal holiday (still without notice to plaintiff), whereby said lands were divided into classes A and B as follows:

| | | | |
|---|---|---|---|
| Class A. | 18,000 acres @ $4 00 per acre.... | $ 72,000 | 00 |
| Class B. | 20,000 acres @ 2 00 per acre.... | 40,000 | 00 |
| | 38,000 | $112,000 | 00 |

—which action, i. e., the taking of 8,000 acres from classes B and C and putting them in Class A, and the taking of 20,000 acres from Class C and putting them in Class B, all without regard to the value of the lands, was ultra vires of said board, and otherwise illegal, as having been taken on a legal holiday and without notice to plaintiff.

It further alleges that the assessment of the parish for 1908 was $2,720,000 and for 1909, $2,600,000: that in violation of law the Board of Equalization instructed the assessor to increase the assessment on the lands in question and similar lands by 101 per cent., and that after the assessor had obeyed the instructions so given him the assessment for 1909 amounted to $3,753,000, which amount, exceeding the aggregate assessment for 1908, is illegal and void.

That the transferring of 8,000 acres of plaintiff's lands from Class B to Class A, and of 20,000 acres from Class C to Class B, and the assessing of them for more than their cash value, is unjust, and, if enforced, will amount to the taking of plaintiff's property without due process of law, in violation of the Constitutions, state and federal.

That after the action had been taken, as thus alleged, the assessor, under the instructions of the Board of Equalization, further increased the assessment on plaintiff's lands to $225,120, which is more than their cash value, and is illegal and void; that when an owner of property files his assessment list, and it is accepted by the assessor, the police jury, sitting as a board of reviewers, cannot change it, without notice to such owner; and that the State Board of Equalization cannot so increase the aggregate assessments of any parish as that the total will be greater than the total of the preceding year; that after the assessment lists have been reviewed by the police jury, sitting as a board of reviewers, and by the State Board of Equalization, the assessor has only to discharge the ministerial function of recording and extending the classifications and valuations of the assessment roll as legally determined, and that any change by him of such classification is unauthorized and illegal.

The prayer of the petition is, in substance, for citation, etc., and that there be judgment annulling the resolution of the police jury of July 5, 1909, and the increase in the assessment of $4 an acre on 18,000 acres and $2 an acre on 20,000 acres of plaintiff's lands, as, also, the increased assessment of 101 per cent. ordered by the State Board of Equalization; that a mandamus issue, directing the assessor to extend upon his official rolls the return made by plaintiff, and to the tax collector to make a similar extension on his

rolls, and to make his collections accordingly, and for full and general relief in the premises.

Exceptions were filed to the jurisdiction of the court, but they were overruled, after which there was judgment, dismissing the suit, and plaintiff has appealed.

The facts upon which the case is to be decided are admitted and are as follows:

### "Agreed Statement of Facts.

"(1) It is agreed that the plaintiff, prior to April 1, 1909, filed with the defendant, tax assessor, a sworn statement and listing of its property, situated in the parish of Richland, state of Louisiana, on which there appeared the number of acres and classification of the acreage into three classes, A, B, C, and the valuation fixed by the plaintiff on said property, and that Exhibit A is a true copy of this listing as filed with the assessor as aforesaid, as follows:

| | | |
|---|---|---|
| Class A. | 10,025.89 acres @ $4 00 per acre... | $40,103 56 |
| Class B. | 7,542.47 acres @ 2 50 per acre... | 18,856 17 |
| Class C. | 20,551.33 acres @ 1 00 per acre... | 20,551 33 |
| | 38,119.69 acres .................... | $79,511 46 |

"(2) It is admitted that the acreage shown on Exhibit A is the approximate acreage.

"(3) It is agreed that after receiving the list (Exhibit A) the assessor, on April 6, 1909, acknowledged the receipt thereof to the plaintiff in the letter marked Exhibit B.

"(4) It is agreed that, subsequent to receiving and filing said list (Exhibit A), the assessor appeared before the police jury, at its meeting on the first Monday in June, 1909, and asked for instructions from that body as to the valuations to be placed by him in assessing timbered lands in the parish of Richland and the manner of classifying the same; and that the police jury at that session, by ordinance, instructed the assessor to assess timbered lands at the minimum price of $2.50 per acre, and the maximum rate of $4 per acre, and agreed to adjourn over for 30 days for the assessor to make such assessment and submit the same to said body as a board of reviewers.

"(5) It is agreed that said body met again, on the 5th of July, 1909; that the assessor appeared before them, sitting as a board of reviewers, and presented to them the assessment list for the parish of Richland; that all of the assessments of property holders of the parish, other than the plaintiff, had extended on the lists the classifications and values of said property by the assessor; that the assessor did not extend any valuation or classification on the lands and property of the plaintiff, for the reason, as stated by him to the board, that he was unfamiliar with the property, and therefore could not properly value and classify it, and asked the police jury to class and value the same; that the police jury, after discussing the matter, and after Mr. Cummings, representing the plaintiff company, had appeared before them and urged the acceptance of the values and classification fixed by the plaintiff itself in the list marked Exhibit A, classified said lands in two classes, A and B, and fixed a valuation of Class A at $4 per acre, and Class B at $2 per acre, and instructed the assessor to extend such classification and values on his rolls as the assessment of the plaintiff in the parish of Richland, La., as follows, to wit:

| | |
|---|---|
| 18,440 acres, Class A, at $4 00 per acre....... | $ 73,760 |
| 20,000 acres, Class B, at 2 00 per acre....... | 40,000 |
| Total assessment ......................... | $113,760 |

"That the assessor obeyed these instructions and assessed the property in accordance therewith, as shown by the copy of the said assessment, filed by the assessor and marked Exhibit C.

"(6) It is agreed that the assessor forwarded to the State Board of Equalization, as provided and required by law and the regulations of the board, an abstract of the parish of Richland, showing the total aggregate assessment for the year 1909—approximately $2,600,000.

"(7) It is agreed that the total aggregate assessment for the parish of Richland for the year 1908 was $2,720,000.

"(8) It is agreed that the State Board of Equalization issued instructions to the assessor of the parish of Richland, ordering him to increase the assessment of hardwood timbered lands of the parish of Richland 101 per centum, as shown by the printed instructions issued by the said Board of Equalizers, attached hereto, as Exhibit D.

"(9) It is agreed that the assessor, in complying with said instructions, raised the assessment of plaintiff from the increase shown on Exhibit C, to wit, $113,760, as filed by him, to $228,000.

"(10) It is agreed that, after obeying the instructions of said Board of Equalizers, in increasing the assessment of the parish of Richland, in accordance with said instructions, the total aggregate assessment of the parish of Richland amounted to $3,753,000 for the year 1909.

"(11) It is agreed that the difference in the taxation of the plaintiff, from the values placed by plaintiff on its property and the values finally assessed by the said Board of Equalizers, is in excess of $2,000."

### Opinion.

1. It will be seen from the foregoing synopsis of the allegations and prayer of the petition that the relief prayed for, is that the court will decree the nullity of the increases (made by the assessor, first, under

the direction of the police jury, sitting as a board of reviewers, and, second, under the direction of the State Board of Equalization) in the supposed assessment, said to have resulted from the alleged acceptance by the assessor of plaintiff's return or assessment list, and, to quote the petition:

"That a mandamus issue, * * * directing the said assessor to record and extend upon his official rolls the said assessment and return made by petitioner, as above set forth; and that a writ of mandamus and mandatory injunction issue, * * * commanding the * * * ex officio tax collector * * * to record and extend on the official rolls on file and in his office the said return and assessment made by petitioner, and to collect the amount of * * * taxes due by petitioner, * * * using the assessment, as rendered by petitioner, * * * as the correct one and the basis for said taxation, and eliminating and taking off of his said roll the unwarranted and unlawful assessment extended thereon by the said assessor."

As it is impossible to subtract anything from, or add anything to, a thing which never had any existence, it is advisable that we should inquire whether there was ever in contemplation of law, any such assessment as that referred to in the foregoing excerpt; that is to say, whether the return made by the property owner ever became an assessment, by reason of any act or omission of the assessor, or of the board of reviewers. We note, as a preliminary to the inquiry, that plaintiff alleges that the assessor "accepted" its return, or list, but the fact, as agreed on, is that he did nothing more than "receive" and "file" it, and so far from its appearing that he adopted it as his assessment, the petition itself alleges the contrary, and the assessor, in the letter marked Exhibit B. (which is referred to in the statement of facts as showing his receipt of said return), says:

"Inclosed you will find copy of the Tensas Delta Land Co.'s assessment in this parish. Many thanks for your kindness in giving me the descriptions. Very truly yours, Jno. M. Ferguson"

—from which, it would appear that the assessor had at that time (April 6, 1909) made an assessment of his own. However that may be, the proposition that the assessor at any time knowingly adopted the return sent him by plaintiff as his assessment is, to say the least, not proved, and, that being the case. it seems to us that plaintiff puts itself out of court on its demand to have said return recognized as the only valid and legal assessment when it says (copying from the brief of its counsel):

"On the first proposition, we respectfully submit that there is, under the laws of the state of Louisiana, but one officer or authority vested with power to make any legal assessment, and that officer, or authority, is the assessor of the parish, or his legal deputy. The law creating the office of assessor vests in that officer the exclusive power and authority to make assessments, and places such power and authority in no other hands."

Counsel, however, in a supplemental brief argue, in effect, that if the property owner makes his return to the assessor, and the time passes at which the assessor is required to give public notice that the assessment has been completed and that the rolls will be exposed for correction, as also the delay for such correction (all as required by section 22 of Act No. 170 of 1898), without his hearing from the assessor to the contrary, he has the right to assume that the assessor has adopted his (the property owner's) return, and has made it his (the assessor's) assessment, "without regard to what the assessor may have intended." That the assessor alone can make a valid assessment, and that the return of the property owner may become the assessment of the assessor, "without regard to what the assessor may have intended," appear to us to be irreconcilable propositions; and, as we accept that first stated as sound (subject to the qualification that the assessment of the assessor may be changed by the board of reviewers or the Board of Equalization, or both), we must reject the other.

2. Plaintiff's next contention is that the State Board of Equalization is without authority to increase the aggregate assessment

of a parish beyond that of the preceding year.

The Constitution provides:

"Art. 225. Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax. * * * In order to arrive at this equality and uniformity, the General Assembly shall * * * provide a system of equality and uniformity in assessments, based upon the relative value of property in the different portions of the state. The valuations put upon property for the purposes of state taxation shall be taken as the proper valuation for purposes of local taxation, in every subdivision of the state."

To carry the article into effect, the General Assembly passed Act No. 182 of 1906, the title of which reads in part as follows:

"An act to provide a mode of equalizing assessments levied on all classes of real and personal property in the State of Louisiana * * *; to create a board of commissioners, to be known as the State Board of Equalization, to prescribe its duties and powers. * * * "

Section 7 provides:

"That the State Board of Equalization shall meet * * * on the third Tuesday in the month of July, each year, and examine the abstracts of property assessed in the several parishes of the state, as returned to the Auditor, and shall equalize the assessments, as hereinafter provided; but said board shall not reduce the aggregate assessed valuation in the state; neither shall it increase said aggregate valuation, except in such an amount as may be reasonably necessary to a just equalization; provided, that the board shall have power to increase the aggregate assessed valuation, as a whole, or in any parish, up to the amount of the aggregate valuation of the preceding year, whenever said aggregate valuation falls below that of the preceding year."

Section 8 provides that "in equalizing the valuation of the property as listed and assessed in different parishes," the board shall consider different classes of property separately, and "determine such rates of addition to, or deduction from, the listed or assessed valuation of each of said classes, in each parish, as may be deemed by the board to be equitable and just," etc.

"Sec. 9. * * * That in equalizing the value of personal property between the several parishes, said board shall cause to be obtained the state averages of the several kinds of enumerated property from the aggregate footings of the number and value of each; and the value of enumerated property thus obtained, as compared with the assessed value of said property in each parish, shall be taken by said board to obtain a rate per cent. to be added to, or deducted from the total value of personal property in each parish; provided, that whenever in the opinion of the board it is necessary to a more just and equitable equalization of personal property, that a rate per cent. be added to, or deducted from, the value thus obtained, in any one or more of the parishes, said board shall have the right to do so; but the rate per cent., hereinafter required, shall first be obtained to form the basis upon which the equalization of personal property shall be made."

"Sec. 10. * * * That lands shall be equalized by adding to the aggregate assessed value thereof, in every parish in which said board may believe the valuation to be too low, such rate per centum as will raise the same to its proper proportionate value, and by deducting from the aggregate assessed value thereof, in every parish in which said board may believe the valuation to be too high, such per centum as will reduce the same to its proper value. Town and city lots shall be equalized in the same manner as herein provided for equalizing lands."

It is manifest that, in order to carry out the purpose of the Constitution and of the act in question, and properly discharge the duty of equalizing the assessments as between the different parishes of the state and the different property holders in the different parishes, the board must reduce the assessments where they are above the average and raise them where they, are below, and, there being no suggestion, and still less proof, to the contrary, it must be presumed that the lands of the plaintiff were found to be assessed at a lower rate than similar lands owned by other persons; hence the increase in the assessment. The last clause of section 7, to the effect that the board shall have power to increase the aggregate assessed valuation as a whole, or in any parish, up to the amount of the aggregate valuation of the preceding year, whenever said aggregate assessed valuation falls below that of the preceding year, appears to be a grant of power which is independent of that conferred for purposes of equalization, and in no manner affects the latter. That the in-

·crease ordered by the Board of Equalization amounted to 101 per cent. is no indication of unfairness to plaintiff, but rather shows that plaintiff's previous assessment was unfair to ·other taxpayers.

3. During the argument of the case the writer of this opinion was rather impressed with the admission contained in paragraph 5 of the statement of facts, to the effect that the assessor, appearing before the board of reviewers, stated that he was unfamiliar with the property in question and requested the board to class and value the same, and that the board did so, and instructed him to ·extend the classification and valuation, as fixed by it, upon the rolls, which instruction he obeyed; and it was tentatively suggested that there seemed to have been, in contemplation of law, no assessment. The assessment has, however, not been attacked on that ground, and it would be unfair to the defense and inadmissible for the court to decide the case upon a point not suggested in the pleadings, upon which plaintiff has not relied, and which defendants have been afforded no opportunity to meet. Moreover, we are unable to reconcile the admission in ·question with the statement contained in the assessor's letter (of April 6, 1909) to plaintiff's counsel and agent: "Inclosed you will find copy of the Tensas Delta Land Co.'s assessment in this parish," and the explanation, together with the copy referred to, might have been made and produced, and might have thrown a new light on the admission, if they had been called for by plaintiff's allegations and demands. It is said by plaintiff's counsel that the pleadings have been broadened by the evidence, admitted without objection, or the admissions; but that rule has no application where the evidence relied on was admissible for the purposes of an issue raised by the pleadings, as was the case in this instance. Upon the whole we find no error in the judgment appealed from, and it is accordingly:

Affirmed.

## On Application for Rehearing.

PER CURIAM. Rehearing refused.

See concurring opinion of LAND, J., 54 South. 712.