## BADEN v. GLOBE INDEMNITY CO.*
### No. 4421.

Court of Appeal of Louisiana. Second Circuit.
Dec. 16, 1932.

Phanor Breazeale, of Natchitoches, for appellant.

Stephens & Gahagan, of Natchitoches, for appellee.

McGREGOR, J.

This is a suit for damages growing out of a head-on collision between two automobiles on the paved highway between Alexandria and Shreveport. On the night of December 22, 1931, at about 11 o'clock, Marvin J. Baden, husband of the plaintiff, in company with R. L. Davis and H. A. Todd, was driving a Ford roadster automobile from a point south of Alexandria to his home in Shreveport, by way of United States highway No. 71. When they were about two miles north of Campti, in Natchitoches parish, their automobile collided with a Ford sedan being driven from Shreveport to Natchitoches by its owner, L. H. Johnson. Mr. Johnson's wife was on the front seat with him and his sister, Mrs. Emma Cunningham, was on the rear seat.

As a result of the collision, Baden was killed instantly and his car was practically demolished, while his two companions miraculously escaped practically uninjured. The Johnson car incurred considerable damage, but none of its occupants received any serious injury.

Mrs. Myrtle Baden, wife of the deceased, Marvin J. Baden, has brought this suit against the defendant insurance company for damages on account of the death of her husband, for the reason that the owner of the car with which her husband collided carried insurance with the said company covering accidents of this kind and guaranteeing a payment of all damages which should be sustained by any person through a collision with the said car. In her petition the plaintiff alleges:

(1) That the automobile which was driven by Johnson ran into and collided with the car driven by her husband and killed him; (2) that the said Johnson at the time of the collision was driving his car on the left or wrong side of the road without any lights; (3) that the driving of his car without any lights and on the left or wrong side of the road constituted negligence and gross carelessness on the part of Johnson and was the sole cause of the accident and of her husband's death; (4) that she has been damaged in the sum of $10,550 on account of the death of her husband, which sum she itemizes as follows: $5,000 for grief, mental anguish, and the loss of her husband's companionship; $5,000 for the loss of support given her by her husband; $250 for funeral expenses incurred; and $300 for the total destruction of the automobile.

The defendant answered and alleged that the death of the plaintiff's husband resulted from his own gross negligence and that the said L. H. Johnson was in no way responsible but was blameless in every particular in the collision of the two automobiles.

At the trial in the lower court there was judgment in favor of the plaintiff for $7,500, and the defendant has appealed. The plaintiff has answered the appeal and has asked that the amount of the judgment be increased to $10,550, the amount originally prayed for.

*Rehearing granted January 19, 1933.

### Opinion.

It is agreed by the parties to this suit that only questions of fact are involved. Each claims that the accident was due solely to the negligence of the other. The question of contributory negligence is not raised in the pleadings, though it is discussed and urged in his brief by counsel for defendant.

The plaintiff claims that at the time of the accident the lights on her husband's car were in good condition and burning. This contention is borne out by the positive and unequivocal testimony of R. L. Davis and H. A. Todd, the two young men who were riding in the car at the time. It is their testimony that the lights were burning brightly. J. H. Blanchard, a witness for the defendant, testified that after the accident the lights on the Baden car were still burning brightly. Ersel Smith, a filling station agent at Campti, and G. E. Crocker, the nightwatchman, testified that the Baden car stopped there in the town of Campti a few minutes before the accident and that the lights were in good condition and burning brightly when they came into the station and when they left. Opposed to this testimony we have that of L. H. Johnson, who says: "I was driving along two miles beyond Campti, coming this way, and all I recall is just seeing a black object just a second before he hit us, and after he hit us I don't remember anything for a few seconds."

In response to a question propounded to him by his counsel as to whether he saw any light on the Baden car, he replied: "No, sir, I was in about fifteen feet of him when I saw the object and it was just a crash."

Mrs. Johnson testified that she never saw the car at all and was unaware of its presence until the two cars collided, and of course she saw no light. The testimony of Mrs. Cunningham was identically the same. Taking this testimony as a whole, the irresistible conclusion is that the lights on the Baden car were burning. The question arises, then, as to why Mr. Johnson did not see them. We cannot answer that question any more than we can say why he did not see the Baden car until he was within about fifteen feet of it.

Even if the Baden car had had no lights at all and Johnson had been looking ahead as he should have been, he would have seen it at a distance much greater than fifteen feet. The probable explanation is that he was inattentive at the moment and did not see the lights for the reason that they were not immediately in front of him. There is some evidence that the Baden car had just come over the brow of a small hill and that may have had something to do with it.

The plaintiff alleges that not only were the lights on her husband's car burning brightly, but that those on the Johnson car were not burning at all. The two young men in the Baden car say that when they first saw the Johnson car it was about fifty feet away and that it had no lights burning. Mr. Johnson says his lights were burning, and in this he is corroborated by his wife and sister. If they were burning, then why did not Johnson see the Baden car before it came as close to him as fifteen feet? It would seem impossible for him to fail to see the Baden car if his lights were burning, and he says they were. Furthermore, if they had been burning and the two ladies were cognizant of the fact sufficiently to remember it and to identify that fact with the time just before the collision, they would undoubtedly have seen the car. These are two most estimable Christian ladies, and, if they had even caught a glimpse of the oncoming car, they would have so testified. We do not believe that they would knowingly vary a word of their testimony to win the case and we do not for one moment question their integrity. They both are active and alert when they are driving in an automobile, but on this occasion it was late at night, they had been on a shopping expedition in a distant city, their bodies were tired, and nature was fast overcoming them. It is more than likely that they were practically asleep. If they had been sufficiently awake to discern and remember that the lights were on and that they were on their own right side of the road, they would have observed the presence of the oncoming car, even though they had no lights, as is claimed. So we say that the testimony of these three witnesses on this point is not convincing and impressive.

Furthermore, when the Johnson car reached Coushatta, Mr. Johnson drove into a filling station to have the generator fixed. It seems that just a short time before he reached that town he discovered that his generator was discharging instead of charging as it should have been doing. This indicated to him, as it would to any motorist, that his lights would be interfered with sooner or later. But there was no mechanic available so he took a chance and drove on with the intention of reaching his home in Natchitoches. This filling station agent testified in the case as a witness for the plaintiff. He is a rank stranger to all the parties and can have no interest in the case one way or the other. It was his testimony that when Mr. Johnson drove into his station he was having light trouble already and that it was to fix his lights that he was seeking help. Mr. Johnson and his wife and sister are all positive and agreed that no trouble had started with the lights at that time and that they were burning brightly. They all testified that it was only a matter of precaution that they wanted their generator adjusted then, for the reason that they knew it would sooner or later cause light trouble. There is a conflict in the testimony in this point that is irreconcilable.

However, be that as it may, in her testimony Mrs. Johnson stated that at times after they left Coushatta they drove with their parking lights "because we noticed that the parking lights didn't cause it to discharge, but every time we would see a car we would turn on the other lights." The plain inference to be drawn from this testimony is that, since they did not see the Baden car until just the instant before the collision, they were using, or thought they were using, the parking lights, for Johnson would not have had time to change his lights after he says he first saw the Baden car. These parking lights may or may not have been burning, even though they were turned on, as that is easily possible. It is true that further on in her testimony Mrs. Johnson indicates that she thought their regular lights were on at the time of the collision for the reason that, as she says, "after the collision the other lights were on." With all respect to the lady, we do not think she is competent to testify on this point, for immediately after the collision her husband rescued her from under the car and left with her for a sanitarium within ten minutes according to his testimony.

On this question of the condition of the lights on the Johnson car after the collision some important testimony was given by J. H. Blanchard, a witness for the defendant. He says that he tried the lights on the Johnson car and only one of the parking lights came on. He then "tried it again and neither one came on, no lights whatever." This testimony is very persuasive and corroborative of plaintiff's contention that the Johnson car was being driven without any headlights. It is more than likely that at the time of the collision Mr. Johnson was driving with one parking light burning and that Baden did not see it until it was too late.

In addition to charging the defendant with negligence with reference to the car being driven without lights, she charged that it was on the wrong side of the road. The evidence convinces us that neither car was completely on the wrong side of the road. It is practically admitted that the collision occurred near the middle of the road. There is some testimony about skid marks from the Baden car to a point several inches over on its wrong side. This evidence does not impress us for there is no proof in the record that convinces us as to just where the actual collision occurred.

Immediately after the collision the Baden car continued forward several feet and came to a stop on its right side of the road with the two right wheels on the shoulder of the road and the two left wheels on the pavement, with the body of the car facing towards Shreveport, that is, in the same direction in which it was traveling. The Johnson car also continued to travel on several feet and came to a stop on its right side of the road,

entirely on the dirt shoulder. But it turned completely around and was facing toward Shreveport, from which it had been traveling. Baden was killed instantly. His car was smashed in at the door where he was sitting behind the steering wheel, and the running board on that side was completely destroyed. That would indicate that his car was struck a tremendous blow by the Johnson car at an angle. Just such a blow as that would have been delivered if the Baden car had been traveling on his wrong or left side and, suddenly discovering his imminent danger, had turned quickly to his right in an effort to avert the disaster. But if that had been true, we think that Johnson would have seen the approaching car sooner than he did. In her cross-examination Mrs. Johnson testified on this point as follows:

"Q. Mrs. Johnson, you say you some times drive with the parking lights? A. Yes sir, because we noticed that the parking lights didn't cause it to discharge, but every time we would see a car, we would turn on the other lights.

"Q. Do you know whether you had on the parking lights or not? A. I don't think we did, after the collision the other lights were on.

"Q. You are not certain whether you did or not? A. No, sir, I wouldn't be positive.

"Q. Mrs. Johnson, with your position on the front seat, if your lights were burning brightly could you tell me why you couldn't see an object, if they were on your side of the road, more than 25 feet away? A. I don't know, if the car had been on our side of the road, I think we would have seen it, but I believe just before it got to us it cut across.

"Q. You do feel that if the car had been on your side of the road, you could have seen it more than 25 feet away? A. Yes, sir, I think I would."

Mrs. Johnson's supposition, however, is not probable or plausible. If the Baden car had suddenly cut across into the path of the Johnson car, as she thinks it may have done, the injury done to the Baden car would not have been the same, for the Johnson car would not have struck it on the left of a strictly head-on collision.

Taking the evidence all together and considering the extent of the injury done by the Baden car, the place of impact, and the instant death of Baden and the escape of the other two occupants without injury, and the position of the two cars after the collision, it appears to us most likely that in the moment before the collision both cars were in parallel paths and that the Johnson car, instead of the Baden car, suddenly cut across and struck it at an angle. It is in evidence that R. L. Davis, one of the young men in the car with Baden, and who was sitting on the right side with H. A. Todd in the middle, was

thrown completely out of the car by the impact. This would indicate that the force came from the left side. If it had been strictly a head-on collision, this would not have happened.

Cases of this kind are always extremely difficult and hard to determine, particularly when only questions of fact are involved. In this case the trial judge evidently found from the facts that the accident was caused by and due to the negligence of Johnson. He saw and observed all the witnesses and probably knew them personally. He observed their manner of testifying and is in a better position to weigh their testimony than we are. Furthermore, he probably is familiar with the scene of the accident and the surroundings.

■ It developed on the trial of the case that Baden and the two young men were on a whisky transportation trip. Thirty gallons of whisky were found in the car. So far as the evidence shows this was their first offense. None of them was shown to be drinking, though. Certainly neither of the young men had any interest in the outcome of this suit. We do not think that their testimony should be rejected on this account.

■ The defendant in this case does not appear to question the right of the plaintiff to a direct action against it, but in her petition the plaintiff asserts her right of direct action in the following language: "That under the laws of the State of Louisiana your petitioner is given and granted the right and option of proceeding against L. H. Johnson alone, or against L. H. Johnson and the Globe Indemnity Company in solido, or against the Globe Indemnity Company alone, and she elects to institute suit and proceed to judgment against the said Globe Indemnity Company alone, reserving her right to proceed against the said L. H. Johnson, should it for any reason be held that she cannot proceed against the Globe Indemnity Company alone, or if the policy of insurance carried by Johnson on the car which was driven by him at the time of the accident is not sufficient in amount to cover all damages sustained by her, by reason of this collision and the death of her husband."

In its answer the defendant denies this allegation flatly and the right is, therefore, put at issue.

For the reasons assigned in Ernest Rambin et al. v. Southern Sales Company, Inc., et al. (La. App.) 145 So. 46, we hold that the plaintiff has the right to bring the suit as she has done against the insurer alone.

■ In the pleadings no reference is made to the contributory negligence on the part of the deceased, but this issue was raised in oral argument in this court for the first time by counsel for the defendant insurer.

It is a fundamental principle of pleading that the defense of contributory negligence is a special plea and must be pleaded in the alternative, but it is argued that evidence may be introduced which, if not objected to, will enlarge the pleadings. We have been unable to find any evidence in this case that was not already admissible under the pleadings. It is an established rule that, if evidence as introduced is admissible for any purpose under the pleadings, it cannot extend or enlarge the pleadings. In Judge Wortham's Civil Procedure in Louisiana, in his discussion of the enlargement of pleadings by evidence, he says: "And with the further restriction, that evidence received without objection *does not have the effect* of broadening the pleadings where admissible for the purpose of *any issue raised by the pleadings.* Tensas [Delta Land Co. v. Ferguson], 128 La. 172, 181 [54 So. 708]; Rogers [v. Southern Fiber Co.], 119 La. 715, 44 So. 442 [121 Am. St. Rep. 537]; Bonnette [v. Wise], 111 La. 855, 35 So. 953." (Italics ours.)

In the case of Cunningham v. Penn Mut. Life Ins. Co. of Philadelphia, Pa., 152 La. 1023, 95 So. 110, 111, the court said: "While there was no objection to the evidence which was offered on the part of defendant, to the point that fraud had not been pleaded, this has not broadened the pleading, for the reason that it was all admissible upon the question of materiality, treating the answers of the applicant for insurance as representations. Tensas Delta Land Co. v. Ferguson, 128 La. 171, 54 So. 708; Rogers v. Southern Fiber Co., 119 La. 715, 44 So. 442, 121 Am. St. Rep. 537; Bonnette v. Wise, 111 La. 855, 35 So. 953; Wortham's Civil Procedure, vol. 1, p. 255."

Succession of Dauphin, 112 La. 103, 36 So. 287, 295: "Evidence received without objection can enlarge the pleadings only where such evidence was inadmissible under the pleadings, and would have had to be excluded if objected to. As a matter of course, evidence admissible under the pleadings cannot have the effect of enlarging the pleadings. If it had such effect, the issues in every case would have to be ascertained from the evidence instead of from the pleadings."

McAdam v. Soria, 31 La. Ann. 862: "The failure to object to the admission of evidence bearing on an issue not made by the pleadings will not authorize the adjudication of that issue, when the evidence admitted is applicable to the issue made by the pleadings. (Cited in Mackesy v. Shultz, 38 La. Ann. 386; Rogers v. Southern Fiber Co. [119 La. 714], 44 So. 443 [121 Am. St. Rep. 537].)"

In 49 Corpus Juris, under the heading of "Pleading," § 1278, it is stated that the admission of evidence without objection may enlarge the pleadings, but that in order for it to have that effect it must be such evidence as is not admissible for other purposes or on other issues.

In this case we have been cited to no evidence which was admitted without objection and which was not already admissible under the pleadings in support of some issue already raised. That being true, the plea of contributory negligence cannot be considered by us.

For the reasons assigned, the judgment appealed from is affirmed with all costs.

DREW, J., concurs.

PALMER, J. (dissenting).

I most respectfully dissent from the majority opinion. I am in accord with the views expressed that the defense of contributory negligence must be specially pleaded, and that the pleadings will not be enlarged by evidence, not objected to, which is in support of other allegations under the pleadings, even though it shows contributory negligence. But in my view, these principles are improperly applied to the facts in this case.

In plaintiff's petition she alleged that the accident was "caused solely and entirely through the negligence and gross carelessness of the said L. H. Johnson in driving his car at night without lights at a high rate of speed and on the wrong side of the road." It was incumbent on her to prove that the fault causing this collision was entirely that of the driver of the Johnson car. This she properly alleged, but, when the testimony of her witnesses is offered, it shows that the deceased was at fault, at least in the particular that he was driving his car partially on the wrong side of the road. The majority opinion holds "the evidence convinces us that neither car was completely on the wrong side of the road. It is practically admitted that the collision occurred near the middle of the road." Each of the two survivors in the Baden car, which was driven by plaintiff's deceased husband, testified that the left wheels of their car were running on the black line dividing the road into two equal parts, at the time of the collision. That being true, the fenders would extend anywhere from six to twelve inches over on the wrong side. If, therefore, defendant's assured was likewise driving his car on this black line, as plaintiff's witnesses said was the case, we would have clear proof that the proximate cause of the injury was the fact that both cars were running, at the time of the collision, partly on the wrong side of the road. That would undoubtedly show a clear case of contributory negligence which would relieve defendant from liability if that defense had been pleaded.

Since plaintiff has voluntarily proved by her witnesses a state of facts that shows contributory negligence on the part of her deceased husband, and which evidence not only was not necessary under her pleadings, but is contrary thereto, I think she has thereby extended the pleadings so as to inject into the case the issue of contributory negligence, and in addition, she has proven that defense, so that defendant is relieved from any liability in this case.

But even if the foregoing conclusions are incorrect, I am still of the opinion that the judgment of the lower court should be reversed because plaintiff failed to discharge the burden of proof resting upon her. In making this statement I am conscious of the well-recognized rule that the findings of fact by the lower court will not be disturbed on appeal, unless manifestly erroneous. But as I appreciate the evidence, that manifest error exists in this case.

There were five survivors of the two cars in this collision. Two of them were occupants of the Baden car, and three of them were occupants of the Johnson car. The two occupants of the Baden car, after having admitted that their car was traveling at least partially on the wrong side of the road, stated that their lights were burning, while the car of the defendant's assured was being driven on the wrong side of the road and without lights. On the other hand, the three occupants of the Johnson car testified that they were traveling on the proper side of the road at the time of the collision, with their lights burning, while the Baden car was being driven on the wrong side of the road and without lights.

In arriving at my conclusions, I take into consideration the character of the witnesses on the two sides. The majority opinion, in referring to Mrs. Johnson and Mrs. Cunningham, two of the occupants of the Johnson car, states "these are two most estimable Christian ladies, and, if they had even caught a glimpse of the oncoming car they would have so testified." We think the majority opinion could have, with equal certainty, stated that Mr. Johnson is one of Natchitoches' most substantial citizens. Against their testimony is pitted the testimony of the two survivors of the Baden car, who were admittedly engaged at the time of the collision in illegally transporting twenty-four gallons of whisky from some unnamed place somewhere south of Alexandria to the city of Shreveport, to be illegally sold at retail. One of them, at least, had recently been released from jail. I cannot accept the testimony of two men who entered into a collusion for the purpose of transporting and selling, at retail, a large quantity of whisky in violation of law, in preference to three witnesses on the other side of the controversy who are admittedly among our finest and best people, for such is the character and reputation of Mr. and Mrs. Johnson and of Mrs. Cunningham. At least I cannot agree that plaintiff, relying upon

such testimony, discharged the burden of proof resting upon her.

For these reasons I think the judgment of the lower court should be reversed.