(72 South. 751)

No. 20550.

ANDERSON et al. v. TEXAS & P. RY. CO.

(June 30, 1916.  Rehearing Denied Oct. 16, 1916.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT ⚮137(5)—INJURIES TO SERVANT—NEGLIGENCE.

Where a switchman, engaged in setting the brakes on the top of a stationary car, was thrown therefrom by the impact of three cars which he knew the foreman was about to push other cars against, the railroad was not liable for his death, unless the impact of the moving cars was so violent as to constitute negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 274, 277, 278; Dec. Dig. ⚮137(5).]

2. MASTER AND SERVANT ⚮278(18)—INJURIES TO SERVANT—MANNER OF DEATH—SUFFICIENCY OF EVIDENCE.

In an action for death of a railroad switchman under a car, evidence that he fell from the top of the car, which was stationary, when others were pushed against it, and met his death in

that way, *held* insufficient to make a case for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 971; Dec. Dig. ☞278 (18).]

3. MASTER AND SERVANT ☞265(6)—INJURIES TO SERVANT—NEGLIGENCE—RES IPSA LOQUITUR.

In an action for death of a railroad brakeman under a car, it being claimed that he fell from the top thereof when other cars were pushed against it, the maxim of res ipsa loquitur applied to make a case for plaintiff only if brakemen never got under the wheels of cars otherwise than as the result of the impact of cars so excessively violent as to knock the brakeman off his balance, notwithstanding due care on his part.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 898, 955; Dec. Dig. ☞265(6).]

O'Niell, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo, T. F. Bell, Judge.

Action by Mrs. D. B. Anderson and others against the Texas & Pacific Railway Company. From a judgment for plaintiffs, defendant appeals. Judgment set aside, and plaintiffs' suit dismissed.

Howe, Fenner, Spencer & Cocke, of New Orleans, and Wise, Randolph, Kendall & Freyer, of Shreveport, for appellant. E. H. Ratcliff, of Natchez, Miss., and Clem V. Ratcliff and Foster, Looney & Wilkinson, all of Shreveport, for appellees.

PROVOSTY, J. The tracks on the yard of the defendant railroad company in Shreveport run east and west. They are crossed at right angles by McNeil street. On the night of the accident which has given rise to the present suit, the cars of a freight train were to be distributed on the several tracks. Before beginning this distribution the foreman and the switchman Anderson whose death has given rise to this suit and another switchman went over the yard together, riding on the pilot of an engine, to view the situation, as we understand. Two freight cars stood west of McNeil street, about a car length from the crossing, on track No. 2. The foreman said:

"We will go up here and let one car into track No. 3, then three cars into track No. 2, then three cars into track No. 3, and then will shove track No. 2"

—meaning that they would then back the train on track No. 2, and push all the cars on it further on east. And he asked Anderson if the two cars on track No. 2 had the brakes on. Anderson said no, and got off the pilot, and went to these cars to set the brakes. The foreman then went about, distributing the cars. He let a car into track No. 3, then three cars into track No. 2, then three into track No. 3, and then was backing into track No. 2, for the purpose of shoving the five cars on that track further on east, when he was signaled to stop, and did so before the end of the train had quite come to the three cars which had, just a moment before, been put on that track. This signal was given by a colored man named Nathan Lawson, who was the night watchman at the Penick & Ford Warehouse, which stood about a hundred feet from the car that was on track No. 2 near the crossing of McNeil street. When the other stationary car on this track was struck by the three cars that were let into this track, this colored man and another colored man named Sherman Lewis, who was with him in the Penick & Ford Warehouse, heard human groans outside, and went out to see what was the matter, and found Anderson under that one of the two stationary cars which was further from McNeil street crossing, under the wheels of the further, or westernmost, truck of this car. Immediately they ran towards the approaching train, and by cries and signals caused it to stop. How Anderson came to be on the track to be thus run over was seen by no one, and can only be conjectured. That he had gone to the top of the two stationary cars to set the brakes, and that the car which ran over him was put in motion by

the impact of the three cars which were sent down the track, can be safely assumed. But whether he had not come down from the cars is left doubtful.

A colored man named B. B. Sherman pretends to have seen him at the moment of the impact on the top of the car nearest the McNeil street crossing; but the testimony of this witness accords so little with that of, the other witnesses, and is so full of contradictions, that it has to be simply put aside as useless.

The colored man Sherman Lewis testified that before he went into the warehouse, while standing outside, he saw Anderson on the top of the car, and that "three or four seconds, or less than ten minutes later, or not even that long," or about the time it would take him to walk across the courtroom, he heard the impact of the cars and the groans. But this witness is entirely unreliable as to time. In the first place, the platform on which he says he was standing outside is a greater distance from the warehouse than the width of the courtroom. In the next place, he says that after he and Nathan Lawson went into the warehouse the latter lit a fire, and was in the act of cleaning the globe of his lamp when the noises outside were heard. According to Nathan Lawson, they had been inside of the warehouse more than half an hour when they heard the noise. We may add that Sherman Lewis is unreliable on other points besides time.

The inference from Sherman Lewis' testimony is that the impact of the cars was rather hard; whereas Nathan Lawson, who was with him, did not hear it, or, if he did, did not notice it, but had his attention first attracted by the groans.

The other switchman, who was standing right by the cars when they came together, the foreman, the fireman, and the engineer of the switching crew, testify that the three cars were not sent down the track that night with any violence, but in the usual manner; that is to say, that as the train was backing slowly, "the slack was given," by which we understand that the speed of the engine was reduced, so that the cars which it was pushing moved on faster than it did, impelled by their momentum, and thereby afforded an opportunity to uncouple the three cars which were to go on and couple themselves to the stationary car under which a few minutes later Anderson was found.

Upon these facts, we do not find that the defendant company can be held responsible for the man's death.

[1] Even if he was thrown from the top of the stationary car by the impact of the three cars, this would not make out a case against the defendant company, unless this impact were shown to have been so violent as to constitute negligence; and this is not shown. On the contrary, the switching and coupling is shown to have been made in the usual way. The track was level, and the speed of the three cars was not greater than it should have been.

[2] But while the supposition may be indulged, with more or less probability, that Anderson fell from the top of the car, and met with his death in that way, that fact is not established with the degree of certainty required for making out a case; indeed, is not established at all, unless, as already stated, by mere inference.

[3] Counsel for plaintiff invoke the maxim res ipsa loquitur; but this maxim could have application to the case only if brakemen never got under the wheels of cars otherwise than as the result of an impact of cars so excessively violent as to knock the brakeman off his balance, notwithstanding due care on his part, and everybody knows the contrary of this. The naked fact of Anderson's having been found under this car proclaims no louder the negligence of the de-

fendant than it does his own, if negligence there was, and not accident pure and simple.

After all the facts of this case are considered, the mind is left in a condition of uncertainty fatal to plaintiff's case. Such, too, is the impression which the learned trial judge had of the case, who refused a new trial simply because he thought the case had better be left to come at once to this court. This course we beg our brethren below not to follow, but, on the contrary, to exhaust the possibility of disposing finally of the case below before sending it to this court already burdened with more than its just share of work.

The judgment appealed from is set aside, and the plaintiff's suit is dismissed at her cost.

O'NIELL, J., dissents.