### ROY v. YARBROUGH.

#### No. 1606.

Court of Appeal of Louisiana. First Circuit.

May 8, 1936.

884

Pujo, Bell & Hardin, of Lake Charles, and Lemle, Moreno & Lemle, of New Orleans, for appellant.

A. ·Wilmot Dalferes, of Lafayette, for appellee.

DORE, Judge.

This suit is to recover the sum of $22,-500 as damages on account of injuries received by plaintiff and damage to his truck in a collision at the intersection of the Old Spanish Trail highway, U. S. 90, and the Elton-Lake Arthur highway within the limits of the town of Jennings on September 12, 1934. Plaintiff was riding in his truck, which was being driven by his employee, Mastin St. Julien, a colored boy about twenty-one years of age. Plaintiff was sitting on the seat with the colored driver and they were traveling in an easterly direction from Lake Charles into and through the town of Jennings. The Elton-Lake Arthur highway runs north and south and crosses highway No. 90 in the western limits of Jennings. At the point of intersection both highways are paved with concrete, but travelers on highway No. 90 have the right of way over the intersecting road.

There is a stop sign placed something over two hundred feet north from the intersection on the Elton-Lake Arthur highway, and also a "drive slow" sign placed on the highway No. 90 about the same distance west of the intersection.

Defendant was driving a Ford V–8 automobile south on the Elton-Lake Arthur highway accompanied by a lady. It was just after noon, and the sky was clear and the sun was shining brightly.

The defendant is charged with negligence in approaching the said intersection from the north at an excessive rate of speed; in failing to stop before entering the intersection; in· driving into said intersection at an excessive rate of speed after plaintiff's truck had entered the intersection; and in failing to observe plaintiff's right of way and in failing to see plaintiff's truck; also in driving his car to the left of the center line of the Elton-Lake Arthur highway.

Defendant denies that he was guilty of any negligence, but avers that the accident was caused solely by the negligence ·of the driver of plaintiff's truck who was in the employ and under the control of plaintiff. It is alleged that the approach to said crossing is difficult because of a house and a growth of trees at the

northwest corner of the intersection; that the driver of plaintiff's truck, instead of keeping to the right of the road, was to the center of left of the road; that had plaintiff's truck been on the right side of the road, the driver of the truck could have seen the approach of defendant's car, and the defendant would have had a better opportunity to see plaintiff's truck; that the sole and proximate cause of the accident was the failure of plaintiff's driver to keep to the right of the road.

Judgment was rendered in favor of plaintiff for $4,263, and defendant appeals. Plaintiff has answered the appeal asking that the judgment be amended by allowing the amount sued for.

There is no serious question of defendant's negligence. He approached the crossing at a rate of speed exceeding fifty miles per hour. He fixes his speed at from forty to fifty m. p. h., but he told two witnesses shortly after the accident that he was going from fifty-five to sixty m. p. h. The physical facts show that he was traveling at an excessive rate of speed considering the location. He also admitted to these two witnesses that he did not see the stop sign placed north of the intersection. His car struck the rear left wheel of plaintiff's truck east of the center line of the intersection, that is, after the truck which was some nineteen feet long had passed the center of the crossing. The impact turned the truck completely over one time and half over again, stopping on its side diagonally across highway No. 90 on the right or south side of the center line some twenty-five feet east of the intersection. In fact, counsel for defendant do not seriously press the position that defendant was not negligent, but they insist that the driver of plaintiff's truck was guilty of negligence, and that, therefore, even if defendant was guilty of negligence, plaintiff cannot recover.

■ Defendant does not press in this court the same grounds of negligence on the part of the driver of plaintiff's truck as was set up in the answer. A plea of contributory negligence is a special defense and must be alleged and proved with the same degree of certainty as is necessary when such negligence is relied on to support a recovery. The negligence attributed to the driver of the truck set up in the answer is his failure to drive plaintiff's truck on the right side of the road on approaching the intersec-

tion, rendering it more difficult for the driver of the truck to see defendant's car approaching from the north, and likewise rendering it more difficult for defendant to see the truck approaching from the west. But now defendant contends that the driver of plaintiff's truck was guilty of contributory negligence in failing to look and see the defendant's car approaching the intersection from the north at a highly excessive speed, and in failing to stop the truck before entering the intersection in the path of obvious danger. In his answer, defendant alleges that the view was obstructed, rendering it difficult to see a car approaching the intersection from either direction. He now takes the opposite position and contends that there was nothing to prevent the driver of the truck from seeing defendant's car approaching the intersection at a dangerous speed, and that the driver of the truck was therefore guilty of contributory negligence in failing to keep a proper lookout.

There is doubt in our mind whether or not we should consider this more or less inconsistent defense of the defendant. However, as the testimony is in the record unobjected to on this ground, we will consider the question.

The preponderance of the testimony shows that there was no obstruction to the view of either the driver of the truck or of defendant in driving his car for some two hundred feet from the intersection. The negro driver of plaintiff's truck testified that he slowed down to about twenty-five m. p. h. on approaching the intersection; that within about twenty feet of the intersection he looked both ways and saw no car coming; that he blew his horn; that he slowed down to about fifteen m. p. h. when he reached the intersection; that when he was about the middle of the intersection, he heard the brakes of defendant's car screech and he looked and saw defendant's car about fifty feet away coming down on him at a fast rate of speed; that he tried to speed up the truck, but defendant's car hit the left wheel of the truck east of the center of the intersection.

■ From the above testimony of the truck driver, which is not contradicted, it does not appear that he was guilty of any negligence unless it was in failing to see the rapid approach of defendant's car toward the intersection. If he looked within twenty or twenty-five feet of the crossing,

that was all that he was required to do; but it is contended that at that distance from the crossing, with nothing to obstruct his view, he should have seen defendant's car coming down the Elton road in time to have stopped before entering the crossing. Assuming that he should have seen defendant's car at that time, at the rate the cars were traveling, we can assume that defendant was about four times the distance away. If the truck driver was near the middle of the intersection when the defendant applied his brakes some fifty feet away, at the speed he was traveling, defendant must have been considerably more than one hundred feet from the crossing when the plaintiff's truck driver approached the intersection, the truck driver having the right of way. If the driver of plaintiff's truck did see defendant approaching the intersection from the north more than one hundred feet from the intersection, the truck driver was not bound to know, and did not know, that defendant would not slow down his speed sufficiently for the truck driver to make the crossing. The truck driver not only entered the intersection first by sufficient time, but he had a right to assume that the defendant would respect his right of way, and the sign posted some two hundred feet away, advising defendant to stop at the intersection before entering. The law on this point is succinctly stated in 2 Blashfield's Cyc. of Automobile Law and Practice (Permanent Ed.) § 1028, p. 196, as follows:

"Notwithstanding the rule stated, in the preceding section, as to the absence of any assumption that other drivers will give way, a motorist having the right of way, in addition to the general assumptions permissible to any motorist, may properly anticipate that others will respect that right, as a branch of his right to rely on other drivers' observance of traffic rules and regulations; he approaches the crossing, expecting and 'entitled to expect, that such others will recognize his right, and his conduct is to be judged in view of that circumstance."

This same principle applies in this state. Blitz v. Munson et al. (La.App.) 159 So. 754; Mills v. Moore (La.App.) 166 So. 169.

The defendant cites us and contends that our ruling in the case of Gray v. Southern Auto Wreckers, Inc., 166 So. 154, should apply to the case at bar and in their favor. We fail to see wherein this case gives any satisfaction to defendant, but is more in line with the quotation from Blashfield, supra, and the cases of Blitz v. Munson, and Mills v. Moore, cited supra. In fact, the writer of the opinion in the Gray Case relied a great deal upon the authority of Blitz v. Munson. The truck driver in the Gray Case had almost intersected the paved highway prior to the collision. And as stated in the Gray Case, had it not been for the gross negligence of plaintiff in that case, the accident would not have happened, while the sole and proximate cause of the accident rests upon the defendant in the case, at bar. Furthermore, it will be observed that in the Gray Case, the positive evidence of the plaintiff himself showed that he saw the approaching truck, and not at any intersection of roads, public or private, when some three or four hundred yards away; the truck had entered upon the highway prior to Mr. Gray, and had somewhat completed half of the intersection prior to the collision. This defendant is in the same position that Mr. Gray found himself; that is, driving head-on into impending danger. To hold otherwise, would be putting a premium upon reckless driving.

The defendant has failed to prove contributory negligence on the part of the plaintiff's truck driver. Plaintiff is therefore entitled to recover.

### Quantum of Damages.

Much of the testimony in the record is taken up in an effort to show the nature and extent of the injuries suffered by plaintiff. It would serve no useful purpose to attempt a minute analysis of this volume of testimony. A brief statement of the several items of damages claimed will suffice.

The items of ambulance service, $22.50, Dr. Harrell, $5, Dr. Clark, $48, Dr. McKinney, $7.50, Dr. Stone, $15, a total of $98 are clear proven. Wrecker service in bringing damaged truck, $4.50, and $375 for the repair of the truck, a total of $379, are proven items.

Plaintiff could not testify that he lost the $61 worth of coffee in the truck; that item cannot be allowed. As to the item of $260 for loss of time during confinement on account of injury, the testimony shows that Mr. Roy lost six weeks,

but there is no testimony by which we can value his time except the testimony of Mrs. Roy, who says that they hired an extra man at $25 per week. We will allow $150 for this item. The item of $1,560, for six months' loss of time while convalescing from the operation which plaintiff must undergo to restore function of his shoulder, is too speculative and uncertain to form the basis of an award; besides, there is no value shown for his services which we might calculate this item of damage.

The other items consist of pain and suffering following operation for four weeks for which plaintiff asks $2,000; permanent and continuous pain on side of neck and shoulder caused from injury, $2,500; permanent injury to right shoulder impairing use of right arm for remainder of life, $7,856; inability to play golf, $1,000; for the cost of a future operation on shoulder and attendant pain and suffering, $1,750; and injury to right brachial plexus, $5,000.

The record shows that plaintiff suffered very severe pain for several weeks after the injury. He also has pains in his neck now which may continue for some time. The item of pain on account of prospective further operation is rather uncertain and indefinite. We will lump the items for pain and suffering, past and future, and make an award for these items to the amount of $2,500.

There is no question but plaintiff has suffered a severe injury to his right shoulder. The shoulder blade is out of place. The right arm cannot be used to any great advantage. The injury will be permanent unless a future operation is successful, which is not altogether certain. Even at best, there will continue to be some impairment. For the shoulder, arm, and nerve impairment with the consequent loss of use, taking into consideration the possible improvement by an operation, an additional award for these remaining items of $2,500 is justified. This makes a total of all the sum of $5,627.50.

For these reasons the judgment appealed from is hereby amended increasing the amount to $5,627.50, with interest from judicial demand, until paid, and as thus amended, affirmed, all at the costs of defendant.

Amended and affirmed.