**ALTHANS v. TOYE BROS. YELLOW CAB CO. et al.**

No. 17161.

Court of Appeal of Louisiana. Orleans.

Oct. 30, 1939.

A. D. Danziger, of New Orleans, for appellants.

Joseph F. Blasi, Jr., and John J. Blasi, both of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, John Althans, instituted this action against Toye Bros. Yellow Cab.

Company to recover damages in the sum of $33,064 allegedly sustained by him as the result of personal injuries he received on the morning of August 1, 1937, when his automobile was struck by one of the defendant's taxicabs in the intersection of Felicity Street and Sophie Wright Place (or Camp Street) in the City of New Orleans. He alleges in his petition that, at about 2:30 a.m. on the date of the accident, he was driving his Dodge Sedan on Felicity Street in the direction of the Mississippi River; that when he arrived at the intersection of Felicity and Camp Streets (Sophie Wright Place), he brought his car to a complete stop in obedience to a traffic stop sign situated at the corner; that before proceeding across the intersection, he looked up and down for approaching traffic on the intersecting street; that from the point at which he stopped, he could see for a distance of a half block up Sophie Wright Place; that, upon observing that the intersection was clear, he started his automobile forward and began traversing it and that, when he had almost preempted it, a taxicab, owned by the defendant and operated by its employee, which was traveling on Sophie Wright Place in the direction of Canal Street, proceeded into the intersection at a high and unlawful rate of speed and ran into the center of the right side of his automobile with great force and violence, knocking his car onto the downtown riverside corner sidewalk of Felicity and Camp Streets against a picket fence where it came to rest on its left side and burst into flames. He charges that the accident was caused solely through the fault of the defendant's driver who was negligent in operating the taxicab at a rate of speed of approximately 35 to 40 miles per hour across the intersection; that the cab driver failed to keep a proper lookout and failed to notice that plaintiff's automobile was already well into the intersection; that, alternatively, if the driver of the cab did see plaintiff's car, then he was at fault in failing to check the speed of the cab and in failing to swerve it in order to avoid striking plaintiff's automobile; that the cab driver also failed to have the taxicab under proper control and that he did not accord to plaintiff the right of way to which the latter was entitled under the provisions of the traffic ordinances of the City of New Orleans. It is further averred that, as a direct result of the accident, plaintiff received severe, painful and permanent injuries for which he seeks restitution in damages amounting to $33,064.

Certain exceptions were filed by the defendant to plaintiff's petition which were overruled. Later, it joined issue by answer in which it admitted the happening of the accident but denied that it was caused through the fault of its employee. It further set forth that, on the date of the accident, its taxicab was being driven down Sophie Wright Place in the direction of Canal Street at a speed not in excess of 20 miles per hour; that, as its cab approached the intersection of Felicity Street, the driver thereof slackened his speed, looked to both his left and right and, observing that the way was clear, proceeded to enter the intersection; that the cab had preempted the intersection and was in the middle of it when it was struck by the car owned and operated by the plaintiff; that the plaintiff (as well as two passengers riding in his car) was under the influence of intoxicating liquor; that he drove into the intersection from Felicity Street without stopping for the traffic stop sign at the corner of Camp Street, and dashed over the crossing at a rate of speed of between 35 and 40 miles per hour and that, in spite of the fact that the cab had already preempted the intersection, he negligently attempted to rush headlong in front of it and beat it across the street. Defendant further pleaded that the driver of the cab was in nowise guilty of negligence and that the proximate cause of the accident was solely the negligence and drunken condition of the plaintiff in that he failed to stop for the traffic sign and was operating his car at excessive speed; in that he attempted to beat the cab across the intersection notwithstanding that the latter had the right of way; in that he was driving his car on the left or wrong side of Felicity Street; in that the brakes of his car were in bad condition and in that he was driving his car under the influence of intoxicating liquor.

The case proceeded to trial before a jury on the foregoing issues and, after a hearing on the merits, there was a unanimous verdict returned in plaintiff's favor for damages in the sum of $16,571.84. Defendant thereupon applied for a new trial which was refused by the court and thereafter there was a judgment entered for plaintiff for the amount granted to him by the jury. The defendant has appealed from

the adverse decision and plaintiff has answered praying that the award of the jury be increased.

We first address our attention to a consideration of whether the cab driver was guilty of fault since the defendant primarily contends that it is not to blame, asserting that the accident is solely due to plaintiff's negligence. The record presented to us for examination is most voluminous consisting of approximately 900 pages. There were 52 witnesses giving testimony at the trial, 26 for the plaintiff and 26 for the defendant. Out of this number, there are only nine persons who claimed to be eye-witnesses to the accident—four for the plaintiff and five for the defendant. After a careful perusal of the transcript, we find it unnecessary to undertake a detailed analysis of all the testimony adduced which, for the most part, is in hopeless conflict, and it will suffice to briefly state the versions given by the principals involved and the eye-witnesses to the collision and weigh their evidence in connection with the physical facts of the case.

The occurrence took place in the intersection of Felicity Street, Camp Street and Sophie Wright Place. Felicity Street is a two-way paved street which runs from the Mississippi River across town in the direction of Lake Pontchartrain. Camp Street or Sophie Wright Place intersects diagonally with Felicity Street and runs from Canal Street in the direction of the uptown section of New Orleans. On the lower or Canal Street side of Camp Street, at the Felicity Street intersection, it is 32 feet 1 inch wide and is burdened by a street car track, the riverside rail of which is 9½ feet from the riverside curbing of the street. At the upperside corners of the intersection, Camp Street increases in width from 32 feet 1 inch to 48 feet 3 inches and at a distance 69 feet from the upperside corners of Felicity Street, it diverges and forms two streets, viz: A gravel street called Camp Street, which is located on the lakeside of the fork, and Sophie Wright Place, a one-way (in the direction of Canal Street) paved street which is 30 feet wide and is located on the riverside of the fork. Sophie Wright Place carries upon it the street car track which connects with Camp Street proper at the Felicity Street intersection.

Plaintiff was driving his car on Felicity Street in the direction of the Mississippi River. On the uptown lakeside corner of Felicity Street, at its intersection with Camp Street and Sophie Wright Place, there is a traffic stop sign cautioning all vehicles approaching the intersection to come to a complete stop before attempting to proceed over the crossing. On this corner near the traffic stop sign there is a growth of heavy shrubbery and it is conceded that a motorist's view of traffic in Sophie Wright Place is somewhat obstructed by its presence when his car is stopped at the sign.

Prior to the accident, the taxicab of the defendant was traveling down Sophie Wright Place in the direction of Canal Street. The cab was being driven near the right hand side of the roadway and was straddling the riverside rail of the street car track, which rail is 9½ feet from the riverside curbing of the street. Upon his approach to the intersection, the view of the cab driver (of traffic proceeding in the lakeside of Felicity Street) was obstructed by the presence of the shrubbery above referred to situated on the uptown lakeside corner of the crossing.

At the time the vehicles collided, the plaintiff's car was traversing the street car tracks at a point approximately in the middle of the intersecting streets. The photographs of plaintiff's car, offered in evidence, reveal that it was struck a severe blow on its right side at its right front fender and right front door which caused that part of the automobile to be mashed in. The photographs of the defendant's taxicab show that all of the damage sustained by it is in the front, inclusive of the front bumper, headlights, fenders and radiator. As a result of the impact, plaintiff's car was knocked over the lower riverside curbing of the intersection and came to rest leaning against a fence surrounding the house situated at that corner. The defendant's cab came to a standstill in the middle of the street near the point of its contact with the plaintiff's car, facing diagonally towards the river.

The following persons, exclusive of plaintiff and the taxicab driver, claim to have been eye-witnesses to the accident: Mrs. Josephine Graf and Arthur Williams, passengers in the taxicab, who testified for plaintiff; Mrs. Otto Kanel, a bystander, plaintiff's witness; James Grinage, a witness for defendant, who was driving his automobile directly in the rear of the taxicab; Vernon Robertson, defendant's witness, who was a passenger in the Grinage

car; defendant's witness, Mrs. Charles Landry, a bystander, and W. V. Seal, defendant's employee, who asserts that he was driving another taxicab in the vicinity of the accident. Of the persons above named, we eliminate, without discussion, the evidence given by plaintiff's witness, Mrs. Kanel, and defendant's witnesses, Mrs. Landry and W. V. Seal, as we find it difficult to believe their statements.

Mrs. Josephine Graf, testifying for plaintiff, stated that she and her father, Arthur Williams, were passengers in the yellow cab on the morning of the occurrence; that, at the time of the accident, the cab was traveling at a speed of about 40 miles per hour; that, when it arrived about 40 feet from the point of impact, she saw the plaintiff's automobile coming across the intersection very slowly; that the front of the cab struck the right side of plaintiff's car a severe blow and that, prior to the collision, the cab driver did not slacken his speed.

Mrs. Graf's father, Arthur Williams, states that he was talking to his daughter just prior to the happening of the accident and that, as a consequence, he did not actually see plaintiff's car before it was struck by the cab. He says, however, that the cab was traveling at a speed of approximately 35 miles per hour and that its driver did not slow down at any time prior to the impact.

James Grinage, testifying for the defendant, declared that, on the morning of the accident, he was driving his automobile on Sophie Wright Place at a distance of about 25 or 30 feet behind the cab at the time the latter approached the Felicity Street intersection. He asserts that the cab was proceeding at a speed of about 25 miles per hour and that, just as it approached the intersection, the plaintiff's car "shot out" of Felicity Street over the intersection at a speed of approximately 35 miles per hour. His testimony is corroborated by the statement of Vernon Robertson, a young boy who was a passenger in his car.

The plaintiff's version of the accident is, in substance, as follows: That he was driving on Felicity Street in the direction of the Mississippi River; that when he came to the corner of Camp Street and Sophie Wright Place, he brought his car to a complete stop in obedience to the traffic sign situated on the uptown lakeside corner of Felicity Street; that, from the point where he stopped, he had an unob-structed view into Sophie Wright Place of about a half block; that he did not see any traffic in the roadway of the intersecting streets and that he put his car into first gear and proceeded to cross the intersection. He further says:

"After I got into the intersection there, I drove at least 10 or 15 feet and I glanced up and here I seen this here Yellow Cab coming at a terrific rate of speed and there was nothing else for me to do, I couldn't stop there and I couldn't go fast enough to get away from him so I tried to curve my car to the left to leave him go behind me, but he just ran right into me."

He further states that, when he had arrived at a point approximately 15 feet into the intersection from the lakeside curbing of Felicity Street, he saw the cab about a quarter of a block away from the crossing proceeding at a rate of 45 or 50 miles per hour.

On the other hand, Hecard, the cab driver, testified that he was driving on Sophie Wright Place towards Canal Street straddling the riverside street car rail at a speed of about 15 miles per hour; that, when he approached the Felicity Street crossing, he slowed down to approximately 8 miles per hour; that, when he arrived at a point about 5 feet from the entrance of the intersection, he looked to the left and then to the right and that, just as he was turning his head from the right, he saw the plaintiff's car for the first time about 20 feet from the left side of his cab, speeding into the intersection at 40 miles per hour. He further states that, confronted by the emergency created by the act of the plaintiff, he swerved his car to the right and applied his brakes so as to give plaintiff a chance to go down Camp Street but that the plaintiff, instead of taking advantage of this opportunity, "swerved around the front of me, and sheared the front of my cab, throwing it more to the river, and his left wheels struck the curb * * *".

■ The story told by the cab driver is in discord with the physical facts and we find it impossible to believe that the accident occurred in the manner portrayed by him. In fact, after a careful scrutiny of all of the evidence adduced, we have no hesitancy in holding that the cab driver was speeding and that he failed to keep a proper lookout. We also entertain extreme doubt as to whether he ever saw plaintiff's automobile prior to the time he

ran headlong into it. In short, we find that the jury correctly concluded that he was guilty of negligence.

Since it is our view that the defendant's employee was at fault, plaintiff is entitled to recover provided he was not guilty of contributory negligence. Counsel for plaintiff contend that the question regarding plaintiff's contributory negligence may not be considered because the defendant has failed to raise that issue as an affirmative defense in its answer.

On the other hand, counsel for defendant maintains that, while the defendant's answer does not particularly label its defense as one of contributory negligence, the facts alleged therein are such as to squarely present the issue.

The defendant, in its answer, after denying generally any fault on the part of its employee, set forth as follows:

"That the driver of the cab was in no wise guilty of negligence and that the proximate cause of this collision was solely the negligence and drunken condition of plaintiff, as aforesaid, particularly in the following respects:

"(a) Failure of plaintiff to stop for the said stop sign;

"(b) Excessive rate of speed at which plaintiff was driving his car;

"(c) Attempt of plaintiff to beat the cab across the intersection which had already been preempted by the cab which had the right-of-way;

"(d) Plaintiff driving his car on the left or wrong side of Felicity Street;

"(e) The bad condition of plaintiff's car and brakes; and

"(f) Driving a car while under the influence of liquors."

The question, therefore, to be determined is whether the foregoing allegations are sufficient to constitute a plea of contributory negligence. Before engaging in a discussion of this proposition, it is pertinent to remark that the pronouncements by the courts of this State, concerning the defense of contributory negligence, are not in complete harmony and that, in some of the authorities, there are expressions which are not only contrary to the views of other cases but which have had the effect of producing a confusion of thought among the members of the bench and the bar. It is therefore of great importance that the apparent conflict in the jurisprudence be reconciled in order to insure, in the future, a more uniform rule respecting the pleading of this defense.

It is now well established that contributory negligence is a defense which must be specially pleaded in order for it to be considered and that the defendant carries the burden of proving the allegations relied upon by him. See Poncet v. South New Orleans Light & Traction Co., 3 La.App. 64; Gauvereau v. Checker Cab Co., 14 La.App. 448, 131 So. 590; Giangrosso v. Schweitzer, 10 La.App. 777, 123 So. 127; Saks v. Eichel, La.App., 167 So. 464; Guillory v. Horecky et al., 185 La. 21, 168 So. 481, and numerous other cases.

In Saks v. Eichel, supra, our Brethren of the Second Circuit declared [167 So. 465]:

"Contributory negligence urged in bar of a plaintiff's right to recover in a tort action is an affirmative defense, and must be specially pleaded to authorize reception of evidence tendered to establish existence of facts forming the basis thereof. It is in the nature of a confession and avoidance. Buechner et ux. v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L.R.A. 334, 104 Am.St.Rep. 455; McDonald v. Stellwagon et al., (La.App.) 140 So. 133. And, of course, one relying upon such defense carries the burden of proof."

We experience no difficulty in determining that the allegations of the answer in this case are insufficient to raise the issue of contributory negligence. It is to be noted that throughout its answer the defendant specifically denies that its employee was at fault and affirmatively avers that the sole and proximate cause of the accident was the plaintiff's negligence, setting forth the particulars in detail. The charges are quite similar to those pleaded in the case of Giangrosso v. Schweitzer, supra [10 La.App. 777, 123 So. 128], where the defendant, after disclaiming any fault on his part, averred that "the accident was caused wholly by the negligence of the unfortunate child in running from behind the large truck directly in front of your respondent's truck so suddenly that the accident, insofar as your respondent was concerned, was entirely unavoidable." It was there held that the allegations could not be regarded as presenting the defense of contributory negligence. In disposing of the matter, we said:

"Whether the seven year old boy was or was not guilty of contributory negligence is unnecessary to determine, since that issue was not raised by the pleadings."

Again, in Gauvereau v. Checker Cab Company, supra, the defendant asserted that its cab did not strike the plaintiff and alleged that his injuries were due to the fact that he jumped off the truck just before it collided, lost his footing, and fell. It was argued by counsel for the defendant that the allegations of the answer were sufficient to constitute a plea of contributory negligence. In holding that that defense had not been put at issue, we said [14 La. App. 448, 131 So. 591]:

"Contributory negligence must be specially pleaded and proven. No such plea is made in this case, and the city ordinance upon which defendant relies is not referred to in his answer. *It is not sufficient to aver the negligence of plaintiff to be the sole cause of the accident.* Giangrosso v. Schweitzer, 10 La.App. 777, 123 So. 127." (Italics ours.)

It is true that our Brethren of the First Circuit, in the case of Lipscomb v. Standard Highway Co., 11 La.App. 508, 124 So. 156, 157, came to a conclusion contrary to the one reached by us in the Giangrosso and Gauvereau cases. In that matter, the defendant denied negligence on its part and alleged that the accident was caused solely by the gross fault, carelessness, and recklessness of the plaintiff. In deciding that the averments were sufficient to raise the issue of contributory negligence, the court said:

"The defendant does not allege contributory negligence on the part of the plaintiff in express terms, but does charge explicitly that the plaintiff's fault, negligence, and recklessness was the sole cause of the accident, and prays that his suit against it be dismissed. This, in our opinion, includes the question of contributory fault, negligence, and recklessness on the part of the plaintiff."

We feel that the holding in the Lipscomb case is inapposite to the vast weight of recent authority in this State. In fact, it is to be observed that the same court has lately refused to interpret an answer similar to the one in the Lipscomb case as constituting the defense of contributory negligence. See Guillory v. Horecky et al., La. App., 162 So. 89, 90. In the Horecky case, the defendants, after denying that their truck driver was at fault, averred that plaintiff's daughter suddenly darted into the path of the oncoming truck and "that the injuries sustained by said minor were occasioned solely because of the negligent

and careless and wrongful acts of said minor, who acted without any regard or caution for her life or person; *. * *". The plaintiff (taking a position opposite from that of the plaintiff in this case) contended that the averments of the answer were tantamount to a plea of contributory negligence and that, inasmuch as the child's contributing fault had not been alternatively alleged, the pleading must be regarded as an admission of negligence on the part of the defendant. In rejecting the plaintiff's argument, the court said:

"The argument that a plea by a defendant in a suit of this kind that the plaintiff is contributorily negligent, not alternatively urged, admits his own negligence, and takes upon himself the burden of proof to show the alleged negligence of the plaintiff, is a correct legal position, but in this instance the alleged negligence of plaintiff's daughter in acting without caution or regard for her person or life in running into defendant's truck *does not justify the conclusion that defendant did anything contributing to bring about what the daughter is said to have done;* consequently the averment is not one of contributory negligence, but it is an exonerating defense affirmatively advanced, as to which the burden of proof is upon the party pleading it." (Italics ours.)

The Horecky case reached the Supreme Court on writs of certiorari. See 185 La. 21, 168 So. 481. There, the decision of the Court of Appeal (which was in favor of the defendant) was reversed on the ground that, on the facts found by the Court of Appeal, the truck driver should have been held guilty of negligence. That court, however, apparently recognized the correctness of the view adopted by the Court of Appeal with respect to the defendants' pleadings for, in the opinion, it is stated:

"*No plea of contributory negligence was filed by the defendants in the lower court,* and, therefore, the main question for our consideration is whether plaintiff's contention is correct, i.e., that the proximate cause of the accident was the negligence of the driver, *or defendants' contention, i.e., that the sole and proximate cause of the accident was the fault of plaintiff's child, and, therefore, the accident was unavoidable on the part of the driver of the truck.*" (Italics ours.)

The answer of the defendant in the instant case may not be differentiated from the pleadings in the Giangrosso, Gauvereau

and Horecky cases and it is our view that it does not present the question of contributory negligence as a defense. The allegations can be interpreted only as a denial by the defendant of any fault, coupled with an affirmative charge that the sole and proximate cause of the accident was the plaintiff's negligence. That such averments are inadequate to raise the issue of contributory negligence finds support not only in the cases above cited but also under the common law. In 45 Corpus Juris 1123, Verbum Negligence, it is stated:

"A plea alleging that plaintiff was injured solely by his own fault, carelessness, or negligence, or by his own negligence and not by any negligence of defendant, is not a sufficient plea of contributory negligence. As a matter of fact it is not a plea of contributory negligence at all, for the law where contributory negligence exists presupposes the negligence of defendant, and a plea of this nature denies it; it is more than a denial that plaintiff was without fault; it is a direct negation of the cause of action, and is in effect nothing more than a general denial or a raising of the general issue. Nevertheless such allegations are sufficient to put in issue plaintiff's negligence as the sole cause of the injury."

Counsel for the defendant, in arguing that the answer should be considered as raising plaintiff's contributory negligence as a defense, directs our attention to the well settled rule of practice of this State to the effect that it is not sacramental for a pleader to label his pleadings or use a particular form and that the courts will look to the facts alleged and not to the form of the pleading in determining whether a point has been put at issue. But we cannot see that the application of this rule of construction can have the effect of changing or converting a denial of negligence and an averment that the accident was caused solely and proximately through plaintiff's fault to a plea of contributory negligence which, of necessity, concedes fault on the defendant's part. As a matter of fact, the only mode by which a plea of contributory negligence can be urged with any degree of consistency, in cases where the defendant primarily contends that he was free from fault, is by special alternative averments. And, while it is not usually imperative for a pleader to label his charges and defenses, it is difficult to conceive of a case where,

in order to clearly state the defense, it would not be imperative (at least by inference) to concede negligence and charge that the plaintiff was also guilty of fault which had causal connection with and contributed to the accident.

The defendant further maintains that, irrespective of the issue of contributory negligence, recovery should be barred because the evidence adduced exhibits that plaintiff was guilty of primary negligence which continued up to the moment of the accident and was the proximate cause thereof. The cases of Ryan v. L., N. O. & T. Ry. Co., 44 La.Ann. 806, 11 So. 30, and Belden v. Roberts, 3 La.App. 338, are cited in support of the proposition.

We see no merit in this argument. Our understanding of the law of negligence is that the injured party is entitled to recover where the defendant is guilty of fault. Once fault has been proven, the defendant may not escape liability except in cases where it is shown that the plaintiff is guilty of negligence which contributed to the injuries he received. And, in such cases, the defendant is not, in truth, excused from his wrongful acts because of plaintiff's negligence. On the contrary, it is proper to say that the court will not permit plaintiff to receive restitution when he himself is at fault. See 45 Corpus Juris 941, 942. On pages 942 and 943 of that authority, it is declared:

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, *concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.* * * * *It has been said that there is no substantial distinction or essential difference between negligence for which defendant is responsible and contributory negligence, and the rules of law applicable to the former are, in general, applicable to the latter.* As in the case of defendant's negligence, contributory negligence may be due to either acts of omission or commission. In other words, contributory negligence *may consist in doing the wrong thing at* the time and place in question, or it may arise from doing nothing when something should have been done." (Italics ours.)

Thus, we see that it is of no importance, insofar as plaintiff's right to re-

cover is concerned, whether he was primarily guilty of negligence or whether his negligence came into being subsequent to the negligence of the defendant for in either case his fault, in order to bar his recovery, must be considered as contributory negligence. The cases cited by the defendant in support of its argument are not in point.

█ The defendant additionally contends that the defense of contributory negligence was put at issue by the plaintiff because he alleged in his petition that he was free from fault. This proposition is without force. In the recent case of Loprestie v. Roy Motors, Inc., et al., 191 La. 239, 185 So. 11, the Supreme Court held that, in an action for personal injuries, the petition need not contain allegations to negative plaintiff's negligence since contributory negligence is a matter of defense to be pleaded and proved by the defendant and that the law presumes, in the absence of evidence to the contrary, that plaintiff was free from negligence. Therefore, forasmuch as it was unnecessary for the plaintiff to negative his own negligence in his petition, his allegation that he was free from fault may be treated as surplusage. Our conclusion on this point finds ample support in the decisions concerning allegations of specific negligence in cases involving the doctrine of res ipsa loquitur. See Pizzitola v. Letellier Transfer Co., La.App., 167 So. 158, and authorities there cited.

█ Counsel for defendant further asserts that the evidence, to which he points as showing contributory negligence on the part of plaintiff, was admitted at the trial without objection and therefore the pleadings have been enlarged so as to present that issue as a defense. It is, of course, axiomatic in our jurisprudence that evidence concerning issues not raised in the pleadings, when received without objection, has the effect of enlarging the pleadings so as to include its consideration as an issue in the case. See Sistrunk v. Audubon Park Natatorium, La.App., 164 So. 667, and cases there cited. But it is likewise well settled, as pointed out in the Sistrunk case, that, if such evidence was admissible under and in support of other allegations presented by the pleadings, it may not be said to have had the effect of introducing new issues because the opposing counsel could not have successfully

objected to its reception at the time it was tendered. In Choppin et al. v. Dauphin, 112 La. 103, 128, 36 So. 287, 296, the Supreme Court said:

"If the evidence was admissible under the pleadings, its admission without objection clearly could not have the effect of enlarging the pleadings."

█ In the case at bar, we find that the evidence, relied upon by defendant as proof of contributory negligence, was clearly admissible under the issue tendered by the defendant's answer. As we have above stated, the defendant, in addition to denying its negligence, filed an affirmative defense in which it set forth with particularity that the accident was caused solely as the result of plaintiff's negligence. At the trial of the case, defendant produced many witnesses in support of its contention. Surely, it cannot be said that counsel for the plaintiff could have successfully resisted the admission of this evidence. And, by the same token, the plaintiff had the right to submit testimony to disprove defendant's theory of the case without subjecting himself to the penalty of having the issue broadened. All such evidence was received in response to the pleadings and did not have the effect of enlarging them so as to tender the defense of contributory negligence.

Counsel for the defendant nevertheless persists that plaintiff's own statement on the witness stand plainly discloses contributory negligence on his part and that, where such evidence is voluntarily tendered, it has the effect of enlarging the pleadings to include that defense. The cases of Ryan v. L., N. O. & T. Ry. Co., supra, Aymond v. Western Union Tel. Co., 151 La. 184, 91 So. 671, Roy v. Yarbrough, La.App., 167 So. 883, Frierson v. Shreveport Grocery Co., 3 La.App. 44, and Baden v. Globe Indemnity Co., on rehearing, La. App., 146 So. 784, are cited in support of this contention.

The cases relied upon, with the exception of Baden v. Globe Indemnity Company, supra, do not sustain counsel's argument. It may be said, however, that there is certain dicta in the cases of Roy v. Yarbrough, supra and Frierson v. Shreveport Grocery Company, supra, from which the defendant may derive some comfort but, be this as it may, we do not regard those matters as authority for the proposition urged.

In Baden v. Globe Indemnity Company, supra the defendant failed to plead contributory negligence as a defense. It was nevertheless argued that, since evidence of contributory negligence had been received in the case without objection, the pleadings had been enlarged. The Court of Appeal for the Second Circuit, on first hearing (see 145 So. 53) resolved that the pleadings had not been expanded because the evidence received was admissible under other issues in the case. However, on rehearing (see 146 So. 784), the court reversed itself and held that the plaintiff, by her own testimony, had proved a state of facts which exhibited contributory negligence on the part of her deceased husband and that, since such evidence did not support her petition, but was contrary thereto, the pleadings were thereby extended so as to inject into the matter the issue of contributory negligence.

The pleadings in the Baden case were vastly different from those in the instant one. There, the answer of the defendant merely denied fault on its part whereas, here, the defendant, in addition to a denial of negligence, filed an affirmative plea in which it alleged that the accident was caused solely through plaintiff's fault. Hence, should we assume that plaintiff's statement on the witness stand exhibits contributory negligence on his part (which is a violent assumption, since his testimony, if believed, shows that he is free from fault), it does not follow that the pleadings were augmented by his evidence so as to tender the issue of contributory negligence inasmuch as evidence concerning his own fault was admissible as responsive to the issue presented by the defendant, i. e., that plaintiff's negligence was the sole and proximate cause of the accident.

We are convinced that the defense of contributory negligence has never been put at issue in this matter. The record shows that, at no time during the trial of the case in the lower court was the issue asserted by the defendant. In submitting its defense to the jury, the defendant did not request of the court that instructions be given concerning contributory negligence, and it was not until the case reached this court, that any mention was made of that issue. In truth, we would be warranted, under the circumstances, to refuse to consider the belated contention on that ground alone. See Whatley v. McMillan et al., 152 La. 978, 94 So. 905; Theodore v. New Orleans Mutual Insurance Association, 28 La.Ann. 917.

In the Whatley case, the plaintiff, a broker, sued on an agreement made with one of the defendants, C. V. McMillan, by the terms of which he was to receive a commission if he procured a purchaser for a tract of land owned by McMillan and the other defendants. The plaintiff sued on the theory that McMillan had authority to make the agreement for the other co-owners of the land and the case was tried on that sole theory. The lower court found that McMillan entered into the agreement without authority from his co-defendants, and held that none of the co-owners, including McMillan, were liable for the commission. On appeal, the plaintiff contended that McMillan should be held liable for the entire amount of the commission, on the principle that an agent is "bound by it (the agreement) in his individual capacity" for whatever he does beyond his mandate. C.C. Art. 3010. The Supreme Court, in refusing to consider this contention, said [152 La. 978, 94 So. 906]:

"Apparently this contention was not made in the trial court, but is being now made for the first time. Perhaps it might have been urged in the alternative in the petition; but this was not done. On the contrary, the unqualified allegation there made is that C. V. McMillan had authority. The case was tried on that sole ground of alleged liability. C. V. McMillan was not called upon by the pleadings to defend on any other ground of liability than that he was a part owner. The contention cannot be entertained."

The defendant next complains that the trial judge was in error when he refused to grant it a new trial because (while the judge was of the opinion that there was liability in the case), he expressed the view that the verdict of the jury was excessive. Many cases of the Supreme Court have been cited by the defendant in support of the argument that, where the trial judge believes that the jury's verdict is excessive, it becomes his duty to grant a new trial. An examination of these authorities reveals that, while the Supreme Court has admonished district judges not to approve a verdict when they are not in agreement with the findings of the jury,

yet, in none of these matters did the court remand the case for a new trial. On the contrary, in each of them the court, after criticizing the action of the judge, undertook to pass upon the merits of the case and made final disposition of it. See Dahlberg v. Shreveport Traction Co., 141 La. 96, 74 So. 707; Anderson v. Texas & Pacific Ry. Co., 139 La. 1104, 72 So. 751; Reems v. New Orleans G. N. R. Co., 126 La. 511, 512, 52 So. 681; Burt et ux. v. Shreveport Ry. Co., 142 La. 308, 76 So. 723, and Halliday v. Lanata, 25 La.Ann. 373. Accordingly, in the instant case, we do not feel authorized to remand the matter for a new trial and we conceive it to be our duty to pass a definitive judgment on the record before us, irrespective of whether the district judge was or was not correct in his refusal to grant a new trial.

Being of the opinion that the plaintiff is entitled to recover, we address our attention to the nature and extent of his injuries. The facts of the case, with reference to this, are as follows:

After plaintiff's car was struck by the taxicab, it caught on fire. Plaintiff was rendered unconscious as a result of the impact and he sustained burns on both of his hands when his automobile burst into flame. He was removed to the Charity Hospital where his injuries were diagnosed to be lacerations of the left hand, second degree burns of both hands, general contusions and abrasions, possible skull fracture with cranial injury and alcoholism. It subsequently developed that the preliminary diagnosis of skull fracture was erroneous but the medical testimony adduced in the case reveals that he did suffer a concussion of the brain which rendered him unconscious for two or three days. After undergoing treatment at Charity Hospital for two days following the occurrence of the accident, plaintiff was removed to Touro Infirmary where it was found necessary to amputate the little finger, part of the ring finger and part of the index finger of his left hand as a consequence of the burns received by him. In addition to this, skin was removed from his thigh and grafted onto the burned portions of his left and right hands for the purpose of aiding the healing of those members. He was confined to the Touro Infirmary for a period of 58 days for treatment and he claimed that he was still suffering from his injuries at the time the case was tried in the lower court.

The visible injuries sustained by plaintiff as a result of the accident are described by Dr. C. P. May as follows:

"He sustained a rather severe injury, as you will notice, to the left hand and lower forearm, resulting in scars and contractions of the skin, a total loss of the little finger, a practically total loss of the ring finger and the middle finger, and of the last joint and a half of the index finger of the left hand. He also sustained injuries to the little finger and the ring finger and the middle finger on the right hand, which is principally in the nature of loss of the nail on the little finger, partial loss of the nail on the ring finger, with scars and contractions of the skin on the back of the fingers. He also has considerable scarring of the left leg and of the right thigh, and considerable scarring of the front of the right thigh."

The medical experts testifying in the case agree that plaintiff has suffered a permanent disfigurement of his left hand and that the loss of his fingers has resulted in a partial disability in the use of that hand of about forty to fifty per cent.

In his petition, plaintiff seeks recovery of damages in the sum of $30,000 for his pain and suffering and permanent disfigurement. In addition to this, he claims $1,189 for hospital bills, $1,000 for doctor bills, $675 for loss of wages and $200 representing the value of his automobile which was demolished in the accident. The jury awarded him $16,571.84. Plaintiff insists that the verdict is inadequate and defendant maintains that it is excessive.

Plaintiff's claim for $200 for the demolition of his automobile is exaggerated. He admitted on the witness stand that the car cost him $50 and it appears that, at the time he applied for a license, he valued it at that sum. His recovery for this item should therefore not exceed $50.

The hospital bill incurred by plaintiff amounted to $471.84 and recovery will be permitted for that sum.

The proof with respect to plaintiff's claim for $1,000 for doctor bills is most unsatisfactory as his physicians refrained, while on the witness stand, from fixing with any definiteness the amounts due them for services rendered to him. In view of this, we are unable to grant him the relief sought on this item.

Plaintiff's claim for loss of wages in the sum of $675 is not sustained by the evidence. On the contrary, he testified that his employer, New Orleans Public Service, paid his salary during the entire period of his illness. This item must therefore be disallowed.

With respect to the damages to which plaintiff is entitled as compensation for his injuries, we think that the verdict of the jury is grossly excessive. The permanent injuries sustained by him consist of the loss of fingers on his left hand and the disfigurement caused by the burns. In the recent case of Masaracchia v. Inter-City Express Lines, La.App., 162 So. 221, the plaintiff's son, who suffered the loss of the first, third and fourth fingers of his left hand, was awarded $7,000 damages by the lower court. On appeal, we reduced the amount to $5,000.

The injuries received by the plaintiff in the instant matter are somewhat similar to those sustained by the injured boy in the Masarachhia case. It should be noted, however, that plaintiff's hurts were probably more painful because of the fact that they resulted from the burns he received. A careful consideration of all the elements involved, including the fact that the plaintiff will be required to use some part of the money he receives to pay the doctors who treated him, has persuaded us that an allowance for his pain and suffering and permanent disfigurement in the sum of $6,000 will amply compensate him for the consequences of the accident. This amount, together with the sum of $521.84, representing the actual expense proven by him, makes a total of $6,521.84 for which he is entitled to judgment.

Finally, we notice that the Board of Administrators of the Charity Hospital of Louisiana at New Orleans intervened in the proceedings and claimed from the defendant the sum of $31.50 for certain hospital treatment rendered the plaintiff. This intervention was instituted under the provisions of Section 1 of Act 230 of 1932, as amended. Counsel for the Charity Hospital has filed a brief in this court in which he states that there was judgment in favor of the intervenor in the district court for the sum claimed in the intervention. We have searched the record and have been unable to find the judgment referred to. The Charity Hospital has not appealed and is therefore not before us.

For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof from $16,571.84 to $6,521.84 and, as thus amended, it is affirmed. Costs of this appeal to be paid by plaintiff, all other costs to be paid by the defendant.

*Amended and affirmed.*