LOTTINGER, Judge.
In this action plaintiff seeks to recover damages for personal injuries and property loss suffered by him as a result of a collision between his 1941 model Plymouth automobile and a 1947 model Dodge dump truck, driven at the time of the accident by one Wallace T. Pugh. Also joined as defendants were Sibley Thompson, the owner of the truck and the Preferred Accident Insurance Company, Thompson’s liability insurer.
The accident happened during the noon hour on November 16, 1948, at approximately the center of the intersection of Canonicus and Winbourne Streets in the ■City of -Baton Rouge. Canonicus Street runs north and south and Winbourne Street runs east and west. The plaintiff at the time of the accident was proceeding north on Canonicus Street and Pugh, the driver of the truck, was proceeding east on Win-bourne Street. It was raining at the time and no one except the drivers of the two vehicles involved witnessed the accident. The lower court dismissed the plaintiff’s suit and he new prosecutes this appeal.
It is admitted from the pleadings that the truck driver, Pugh, was engaged in the course and scope of his employment at the time of the accident, and further that the owner of the truck was covered by insurance with the defendant insurance company. Also, it is clear from the evidence that there were no traffic signals or signs at the intersection -and that neither street was more frequently travelled than the other. Plaintiff, therefore, claims to have had the *659 right of way by virtue' of having approached the intersection from the right as provided in our Highway Regulatory Act, Act No. 286 of 1938, Rule 11(a), Sec. 3. In a short written opinion, the trial judge had this to say:
“From the evidence, I am unable to say that plaintiff, by a preponderance of evidence, has proved that the accident resulted from the negligence of defendant Pugh and that plaintiff was not guilty of contributory negligence.
“I am of the opinion that because of the heavy rain then falling neither of the drivers exercised proper care in entering the intersection without ascertaining that same could he traversed safely.”
Counsel for appellant contends that the holding of the lower court as quoted above is in error because it requires of plaintiff that he prove his freedom from contributory negligence. In support of this argument he cites Althans v. Toye Bros. Yellow Cab Company, La.App., 191 So. 717, 722, Saks v. Eichel, La.App., 167 So. 464, and other cases which recite the rule that the burden of proving contributory negligence rests upon the defendant. We readily acknowledge that such is the rule in this state, but we fail to see where it has been violated by the holding of the lower court. We think that what the trial judge meant to say and did say was that from, the evidence as a whole he could not find proof of the accident having resulted from the negligence of the defendant truck driver, nor could he find the absence of contributory negligence on the part of the plaintiff. This is made clear, we think by the second paragraph quoted above wherein it is stated that “ * * * neither of the drivers exercised proper care in entering the intersection * * * ”.
Appellant next argues very strenuously that the defendants are not entitled to set up the special defense of contributory negligence because of the fact that same was not specially pleaded in their answer. In support of this contention he again cites the ruling in the Althans case, supra. In that particular case the court Held as insufficient to raise the defense, the following allegations of the answer:
“That the driver of. the cab was in no wise guilty of negligence and that the proximate cause of this collision was solely the negligence and drunken condition of plaintiff, as aforesaid, particularly in the following respects:
“(a) Failure of plaintiff to stop for the said stop sign;
“(b) Excessive rate of speed at which plaintiff was driving his car;
“(c) Attempt of plaintiff to beat the cab across the intersection which had already been preempted by the cab which had the right-of-way;
“(d) Plaintiff driving his car on the left or wrong side of Felicity Street;
“(e) The bad condition of plaintiff’s car and brakes; and
“(f) Driving a car while under the influence of liquors.”
The court then, at 191 So. 724, stated the rule to be as follows:
“As a matter of fact, the only mode by which a plea of contributory negligence can be urged with any degree of consistency, in cases where the defendant primarily contends that he was free from fault, is by special alternative averments. And, while it is not usually imperative for a pleader to label his charges and defenses, it is difficult to conceive, of a case where, in order to clearly state the defense, it would not be imperative (at least by inference) to concede negligence and charge that the plaintiff was also guilty of fault which had causal connection with and contributed to the accident.”
■ The pleadings complained of in the instant case are to be found in Articles 30 and 31 of the answer, which read as follows :
“30.
“The allegations of paragraph thirty are admitted.”
Now in the alternative, and only in the event that this Honorable Court finds that the said, Wallace Pugh, was guilty of *660 some negligence contributing to this acr cident, defendants allege and say:
“31.
“That petitioner herein is guilty of negligence contributing to this accident in such manner as to preclude any recovery whatsoever in that petitioner was driving his vehicle at an excessive rate of speed, approaching an intersection he knew to be dangerous and without traffic controls, during a heavy rain storm, in that he did not have his vehicle under proper control nor was he keeping a proper look out and in that he entered said intersection at a rate of speed which was very reckless and careless under all the surrounding facts and circumstances and at a time that the said, Wallace Pugh, had preempted said intersection and had thereby been accorded the right of way over 'all intersecting traffic.”
Applying the rule of the Althans case, to the case at bar we experience no difficulty in concluding that here the defendants properly raised the issue. The allegations concerning negligence on the part of the plaintiff are pleaded in the alternatives, and the facts constituting the alleged negligence are expressly stated. Further, the very allegation “that petitioner herein is guilty of negligence contributing to this accident in such manner as to preclude any recovery whatsoever * * * ” to our minds, at least, states very clearly that defendants are pleading and relying upon the doctrine of contributory negligence as part of their defense.
The issue having been properly raised, we next proceed to the question of negligence, if any, on the part of the plaintiff, for, under well established jurisprudence, if guilty of contributory negligence, his right to recover is barred. No one but the drivers of the respective vehicles witnessed the accident, and the physical facts, which are few, are not very helpful in determining the issue.
The plaintiff’s testimony we find to be in substance as follows: He had taken his children to school and was returning to his home a few blocks- further north on Can-onicus Street, when he approached the intersection. When some seven or eight feet away, he applied his brakes and as the car slowed down he looked to the right, and then, after rolling down his left window, looked to the left down Winbourne Street. There was nothing to obstruct his view and he could then see approximately half way down the block. He saw nothing approaching and while rolling his window back up shifted to second gear. When approximately half way across the intersection and while shifting from second to third gear he suddenly saw the truck approaching at “a high rate of speed” some twelve feet away. The truck was on the left side of Winbourne Street and he saw the driver “standing upon the steering wheel”, which he later explained to mean standing up and pulling on the steering wheel. Plaintiff at this time was not going over fifteen miles per hour and had no time to do anything before the truck collided with the left front portion of his car. As a result of the collision, plaintiff’s car veered to the right, his door flew open and he was thrown into a ditch half filled with water.
The only other eye witness to the accident, Pugh, testified that he was not familiar with Baton Rouge, having lived there only four months. He had been detoured onto Winbourne Street and was en route for a load of gravel at the time he approached the intersection. There was some “scenery” (meaning bushes) about waist high on his right, but nevertheless he could see one third of the way down Canonicus Street and could see nothing approaching. He then proceeded to cross at a speed of about ten miles per hour, when suddenly he saw plaintiff’s car approaching. He had no time in which to do anything to avoid the accident and the plaintiff’s car struck the forward portion of his right front fender. Later on during the trial Pugh testified that his lights were burning and his windshield wipers were working at the time he approached the intersection. Further, he said that he had not gone over fifteen miles per hour in the block before he reached Canonicus Street, and that he shifted into second as he entered the intersection. He was on the right side of Winbourne Street, and did not start across the intersection until after looking first to *661 the right and then to the left. He says that he has “good reason.” to believe that he entered the intersection first.
The foregoing testimony is, of course, in hopeless conflict. Each driver contends that he entered the intersection first at a slow rate of speed and that the other suddenly appeared travelling at a very high rate of speed. It is undisputed that after the impact plaintiff’s car veered off on approximately a forty-five degree angle, cleared a ditch and came to rest some forty feet from the point of impact, while the truck made approximately a ninety degree turn and proceeded some twenty-six or twenty-seven feet in a northerly direction. Some attempt was made to show that the truck was stopped by a tree and that the car was stopped by a house, but as none of the testimony on this point was very definite, it is of little value.
The truck driver, Pugh, stated that there was a shrub on the corner of the intersection, and a Mr. J. E. Farlow, who lived in the vicinity testified to the same effect. Just what the size or height of the shrub was we are unable to determine as Pugh stated that it was not over waist high and Farlow testified that it was “not over six feet high”. At any rate, according to Mr. Farlow, it would appear that one travelling east on Winbourne Street would have to be even with the intersection in order to be able to see down 'Canonicus Street. This would seem to be of some significance, for if such is the fact, and we have no reason to doubt but that it is, the same would be true of one proceeding north on Canonicus and attempting to see down Wibourne Street.
As stated before, the plaintiff in this case places much weight upon the fact that he approached the intersection from the right and therefore had the right of way. However, under the very terms of the act itself, Act No. 286 of 1938, Rule 11(a), Sec. 3, this initial right of way is forfeited by one approaching the intersection in an unlawful manner. The rule concerning the respective duties of vehicles approaching an intersection such as the one here was stated in Hatch v. Bayou Rapides Lumber Co., La.App., 200 So. 41, 43, to be as follows:
“It is the duty of a motorist to approach such an intersection carefully, keeping a lookout to his right and left, and to govern his movements from traffic conditions then and there prevailing. If conditions warrant it, he has the unqualified right to freely enter and cross the intersection. If the view of the motorist is obscured on his right or left, this circumstance demands of him greater caution than would otherwise be required of him. He has not the right to gamble by assuming it safe to cross the intersection when he has not had full opportunity to scan the surroundings. If he does so, and is injured or injures others free of fault, the blame rests .solely upon him.”
Here plaintiff approached the intersection under very bad driving conditions. Besides the heavy rain which was falling, his view to the left was no doubt obstructed by the shrub. And while there is nothing in the record to prove that he did not slow down and look to the left as he says he did, we feel that had he looked more carefully he could and should have seen the truck approaching. Of course, the situation would' be different had the truck been approaching at an excessive rate, alleged by plaintiff. The record stands devoid of any such proof, however, and we can only conclude that plaintiff failed to exercise that degree of care which he should have before proceeding across the intersection.
Viewing the entire case in a light most favorable to the plaintiff, we can only conclude that he and the truck driver each negligently approached the intersection without knowledge of the other’s presence until too late for either to avoid the accident. Under circumstances such as these plaintiff is not entitled to recover, for the proximate cause of the collision was the concurring negligence of each.
Finding no manifest error in the findings of the lower court and for the reasons assigned above, the judgment appealed from is affirmed.