HERGET, Judge.
These two suits arise out of a vehicular collision on November 2, 1958 at about 1:30 p. m. between a 1957 Ford car owned and allegedly driven by William Clayton Milton in a westerly direction on State Route 38, and a 1949 Ford car owned by Willie Wilson and allegedly driven by his unemancipated minor son, Ralph Wilson, in a southerly direction on Anglin Road. The accident happened near the intersection of State Route 38 and Anglin Road east of Kent-wood, in Tangipahoa Parish. State Route 38, a blacktopped road, runs generally east and west and Anglin Road, which is grav-elled, runs generally north and south and forms a “T” intersection with State Route 38 at its southern limit. The general terrain in this area is hilly and to the east of the crest of a hill where these roads intersect there is a valley or depression in the roadway of State Route 38 which, from the intersecting points, effectively prevents one when entering from Anglin Road observing a vehicle in such depressed area.
Great American Indemnity Company, the collision insurer of Milton, having paid the sum of $1,517.28 to Milton and having obtained a subrogation of said claim instituted suit against Willie Wilson, Individually and as Administrator of the Estate of his minor son, Ralph Wilson, for the amount of said claim.
Willie Wilson, in his capacity as natural tutor of the minor, Ralph Wilson, sued Milton’s liability insurer, Detroit Fire and Marine Insurance Company for $10,000 for his minor son’s pain, suffering, mental anguish, permanent disability and impairment; and sued individually for medical expenses and property damage incurred by him which, by stipulation, aggregated $1,170.50.
The two cases were consolidated for the purpose of trial before a civil jury, which jury, after a trial on the merits, returned a verdict in favor of plaintiff, Willie Wilson, as tutor of the minor, Ralph Wilson, in the sum of $7,500 and in favor of Willie Wilson individually in the sum of $2,812.50, the judgment being against Detroit Fire and Marine Insurance Company. In the case of Great American Indemnity Company against Willie Wilson, individually, and as administrator of the estate of his minor son, Ralph Wilson, the jury rendered a verdict in favor of the defendant, Willie Wilson individually and as the administrator of the estate of his minor son, Ralph Wilson, and against the plaintiff, Great American Indemnity Company, rejecting its demands against said Defendant. The Trial Court denied a new trial upon the consent of Willie Wilson, individually, to a remittitur of $1,663.30, though in the consent to the remittitur filed by counsel for Willie Wilson he reserved his right to judicially seek an increase in the award to Willie Wilson, as tutor on behalf of the minor.
From these judgments, on May 1, 1961 Great American Indemnity Company, through its counsel, was granted an order of appeal to this Court suspensive or, in the alternative, devolutive, returnable June 26, 1961. In the case of Willie Wilson, Individually and as Natural Tutor of the minor, Ralph Wilson v. Detroit Fire and *479 Marine Insurance Company, on May 5, 1961 Detroit Fire and Marine Insurance Company, through its counsel, was granted an appeal to this Court suspensive or, in the alternative, devolutive, returnable on or before June 26, 1961. Both of these appeals were perfected and lodged in this Court on the 5 day of June, 1961 and were heard in this Court concurrently.
On September 25, 1961 in the case of Willie Wilson, Individually and as Natural Tutor of his Minor Son, Ralph Wilson, versus Detroit Fire and Marine Insurance Company, counsel for Plaintiff filed in this Court an answer to the appeal seeking an increase to the sum of $10,000 in the judgment in favor of plaintiff, Willie Wilson as tutor for the use and benefit of his minor son, Ralph Wilson, and judgment in favor of plaintiff, Willie Wilson, individually, in the sum of $1,170.70.
Counsel for Detroit Fire and Marine Insurance Company, on September 28, 1961, filed a motion in this Court to dismiss the answer to the appeal by Willie Wilson, individually and as natural tutor of his minor son, Ralph Wilson, for the reason that same was not timely filed.
Relying upon the cases of Martens v. Penton, 15 La.App. 35, 130 So. 354; Fortenberry v. Preferred Accident Ins. Co., La. App., 48 So.2d 657; and Rolls v. Bell Cabs, La.App., 161 So. 911, learned counsel for Great American Indemnity Company and Detroit Fire and Marine Insurance Company maintain that this collision resulted from the sole negligence of Ralph Wilson in entering State Highway 38 from Anglin Road, an inferior highway, without making certain that such entry could be made with safety and in blocking the passage of the westbound Milton car.
The record reveals immediately prior to the accident Ralph Wilson had picked up Ivy Earl Cutrer and together they had stopped at the home of Clarence Schilling located on the Anglin Road about 100 yards from the scene of the accident; Clarence, Ralph and Cutrer were on the back porch of the Schilling home smoking cigarettes when Ralph left to go to the funeral of his aunt; Clarence and Cutrer watched him depart and their testimony is that he stopped on Anglin Road at its intersection with Highway 38; that he entered the intersection, turned left easterly and had traversed some 38 or 40 feet on Louisiana Highway 38 in the the right traffic lane for vehicles proceeding in an easterly direction when the vehicle he was driving was struck in the left front and along the left side by the Milton vehicle proceeding westerly on Route 38 when it veered over into Wilson’s lane of traffic. According to Wilson’s own testimony he stopped at the intersection of Anglin Road with Highway 38, observed no cars approaching from the east on State Highway 38, entered the intersection and turned left on Louisiana Highway 38 into the right lane for easterly traffic and had proceeded easterly for a short distance, 40 or 50 feet, when his vehicle was struck by the Milton car in his, Wilson’s, lane of traffic. In a statement he gave to an adjuster for the insurance company, which was offered in evidence, Wilson related that he did not observe the oncoming Milton car until he was across the center of the blacktop in the act of making his left turn “ * * * an (sic) a split later the impact occurred.” On the trial of the case young Wilson testified that he did not remember making the quoted statement.
Milton testified that he was traveling west on Louisiana Highway 38 at about 60 to 65 miles per hour; that the approach to the Anglin Road which rests at the crest of the hill is a steep incline and as he drove up the hill on Highway 38 he was unable to observe the intersection. He stated as he neared the top of the hill that he observed Wilson who appeared to be attempting to enter the intersection, at which time he, Milton, applied his brakes. He then related upon reflection he determined that Wilson was not going to enter the intersection and that he again accelerated his automobile until he saw Wilson proceed into the highway and he then slammed on his brakes with such force that “ * * * I bent the pedal *480 into the floor trying to stop.”; that in attempting to avoid the collision with Wilson he swerved to his left, crossing two feet over the center line of Highway 38 and the left front of his automobile collided with the left front of the Wilson vehicle.
Smiley Conerly who testified that he was an employee of Stegalls Garage, was 19 years of age, related that he, Milton and Lionel Cutrer were at Spring Creek to play hall; that he left Spring Creek prior to Milton and Cutrer to go to his home via State Route 38 about six miles east of Kentwood; that Lionel Cutrer first passed him traveling at some 70 or 75 miles per hour; that he, Conerly, was traveling around 60 or 65 miles per hour, and that Clayton Milton subsequently passed him at a speed estimated by him to be 70 or 75 miles per hour or maybe it could have been 80; that Clayton Milton passed him at a point traveling at the speed estimated by him about a quarter of a mile or less from the scene of the accident.
Though Milton testified that he was not ■exceeding the speed limit of 60 miles per hour, it is evident that he was proceeding at a much greater speed. The record reveals that the Milton vehicle left skid marks before the point of collision of 152 feet and after colliding with the Wilson vehicle and pushing it in a southwesterly direction 47 feet leaving those additional skid marks, his vehicle skidded some 199 feet in all. In a general sense we might apply the Speed Chart as printed in Vol. 9C, Blashfield’s Cyclopedia of Automobile Law and Practice, Sec. 6237, and conclude a person traveling at 60 miles per hour would he able to ■stop within 226 feet allowing 66 feet for reaction time and 160 feet for skid marks. Thus, if Milton had been traveling at 60 miles per hour, having already left 152 feet of skid marks, his vehicle would have been almost at a standstill making it impossible for him to push the Wilson vehicle an additional 47 feet.
Some time subsequent to this accident, according to Ralph Wilson’s testimony he was present when measurements were made as to the distance one could observe a caí approaching from the east on Highway 38 from the point of intersection of these roads and the distance was 360 feet.
Photographs of the scene of the accident were introduced on the trial of the cases. They reveal that the closest point vehicles would be visible to each driver approaching this intersection from the directions these vehicles were approaching is approximately 440 feet. There are two signs on State Highway 38; the first, a cattle crossing sign, about 440 feet from the intersection and barely visible from the crest of the hill and vice versa to one’s view from the sign; the second sign, indicating a school bus loading zone, is 300 feet from the intersection and clearly visible.
From our observation of the photographs in the record and from the testimony of the witnesses referred to, we are of the opinion that the sole cause of this accident was the excessive speed at which Milton was driving; that when young Wilson stopped at the intersection of the Anglin Road with State Highway 38 he made observation of traffic to his left, that is to the east, the direction from which the Milton car was approaching, and that because of the depression in the highway the Milton car at that time was not observable to him, so there was no reason for him to anticipate that his entry into the highway would in any way result-in an accident. There is no law requiring one to anticipate the approach of a vehicle hidden from his view traveling at an excessive rate of speed. To the contrary, a motorist entering an intersection under such conditions is entitled to presume that drivers of vehicles approaching the intersection on the highway will be proceeding within the legal speed limit. Wilson having entered the intersection under such circumstances had a right to proceed to cross same and make his left turn.
It is conceivable that this accident occurred prior to Wilson making the left turn and proceeding as he testified and as corroborated by the two witnesses some 38 to 50 *481 feet in an easterly direction in his lane of traffic prior to the collision, hut we are of the opinion that even if he had not so proceeded in an easterly direction there was nothing he could have done to have avoided the collision subsequent to his entry into the intersection. If he had brought his car to a stop in Milton’s lane of traffic he had no reason to believe that Milton would veer to the left and pass his car. On the other hand, because of the speed and lack of control of the Milton car Wilson was placed in a most perilous position solely because of the excessive speed and recklessness of Milton. He was, so to speak, a sitting duck.
As a result of the accident Ralph Wilson suffered severe and painful injuries, including a cerebral concussion, fractured skull, compound fracture of the jaw, broken hand, broken foot and general contusions and abrasions. Because of the fractured mandible it was necessary for him to undergo a procedure, under general anesthesia, to drill holes through his jaw, insert Bigelow screws and put an arch bar in his mouth; his jaws were locked together with the Bige-low screws for 53 days and the arch bar stayed on him for 66 days; it was necessary to place his broken foot and his hand and arm in a cast; for a period of six months he could be fed only liquids; it was necessary to give him sedation for the relief of pain for some two or three months following the accident, so that his injuries were both extensive and undoubtedly painful and the award therefor of $7,500 is warranted.
LSA-C.C.P., article 2133 provides:
“An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record, whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him and of which he complains in his answer.”
LSA-C.C.P., Vol. 1, page 748, Act No. 15 of 1960, Section 4, being the enabling act, in part provides:
“(A) * * *
“(B) The provisions of the Louisiana Code of Civil Procedure enacted by Section 1 hereof, so far as applicable, shall govern and regulate the procedure in all civil actions and proceedings:
“(1) * * *
“(2) Pending on the effective date of this act, except that none of the provisions thereof shall:
“(a) Decrease or shorten any procedural delay granted or allowed by any law in existence immediately prior to, and which had commenced to run but had not yet completely elapsed on, the effective date of this act; or (Emphasis supplied.)
“ (b) * * * ”
Inasmuch as Appellants’ appeals had been perfected and lodged in this Court on June 5, 1961 and the answer to the appeal of Detroit Fire and Marine Insurance Company by Willie Wilson, Individually and as father and natural tutor of the minor, Ralph Wilson, was not filed until September 23, 1961, same was not timely filed, as required, within fifteen days after the return day or the lodging of the record, but it is the contention of counsel for Wilson that the suit having been filed prior to the effective date of the Louisiana Code of Civil Procedure, January 1, 1961, he is entitled to rely on the provisions of Article 890 of the Code of Practice permitting the filing of an answer before argument and within the first three days of the sitting of any regular session of the Court of Appeal.
As the procedural delays had not commenced to run in this suit prior to January 1, 1961, the appeals not having been taken *482 until May 1, 1961 and May 5, 1961 by Appellants, the delays provided in LSA-Code of Civil Procedure are applicable and, accordingly, the answer of Appellee to the appeal of Detroit Fire and Marine Insurance Company not having been timely filed, is dismissed.
For these reasons, the judgments of the Trial Court are affirmed.
Affirmed.